TAMIAMI TRAIL TOURS, INC., v. FLORIDA RAILROAD COMMISSION

174 So. 451:
Opinion Filed March 11, 1937.
Rehearing Denied April 6, 1937.

*A. Pickens Cole* and *Sutton, Tillman & Reeves*, for Petitioner;

*Theo. T. Turnbull* and *Wm. P. Simmons, Jr.*, for Respondent;

*W. J. Oven, G. A. K. Sutton, Doggett & Doggett, Milam, McIlvaine & Milam, Waller & Meginniss* and *Charles H. Spitz*, as *Amicus Curiae*.

PER CURIAM.—On petition for writ of certiorari, motion to dismiss the petition was filed and the case has been brought on for hearing on petition, motion to dismiss and the merits. Briefs have been filed by all interested parties; oral argument has been had and the issues involved considered by the court.

The petitioners contend that the Railroad Commission in the determination of its judgment on the application of Tamiami Trail Tours, Inc., and in entering its order pursuant thereto, departed from the essential requirements of law.

Petitioner on May 27, 1935, filed its application with the Railroad Commission of the State of Florida for an extension of its certificate of public convenience and necessity No. 28, seeking the right to operate as a common carrier of passengers and light express, two schedules daily, between Tampa, Florida, and the Georgia-Florida State Line via Brooksville, Inverness, Dunnellon, Williston, Cross

City, Perry and Tallahassee, over State Highways Nos. 5, 19 and 10.

A hearing was had; testimony was taken and the Commission entered an order No. 811, denying the petition.

Mr. Commissioner Carter did not agree with a majority of the Commission and filed his separate opinion dissenting from the views expressed by the majority.

On the 5th of May, 1936, petitioner filed amendment to the application and motion for rehearing, both phases of which were denied by order of May 7th, 1936.

It is contended here that certiorari will not lie because the order involved was a negative one. This contention is not tenable because, as we have heretofore stated, "the determinative order granting or denying the right or privilege under the statute may be quasi judicial in its nature and have the quality or finality making a writ of certiorari a proper means for a permissible judicial view of the order where no other remedy is afforded by law." See Fla. Motor Lines, Inc., v. R. R. Commission, 100 Fla. 538, 129 Sou. 876; also Central Truck Lines, Inc., v. R. R. Commission, 118 Fla. 555, 160 Sou. 26.

In Mr. Commissioner Carter's dissenting opinion he said:

"Section 3 of Chapter 14764, Acts of 1931, provides that when the Railroad Commission in considering an application for Certificate of Public Convenience and Necessity, such as that of Tamiami Trail Tours, Inc., herein, the interest of the territory as a whole is paramount in importance, as against the personal interest of a particular transportation company.

"The State of Florida is now the tourist mecca of the United States, so much so that its appeal increases annually many fold, and the lower East Coast occupies the center of attraction. Already the East Coast enjoys the great ad-

vantages of unexcelled bus transportation, which transportation business is within the exclusive hands of a single company. And the dangerous congestion of traffic and the excessive burden of travel on the East Coast highways serving the lower portion of the State on the Atlantic are emphasized and pictured by that single transportation company, to this commission, on every occasion when any attempt is made by any other auto transportation company to invade its said vast exclusive domain.

"The only other outlet to and from the lower East Coast, than the highways along the Atlantic Seaboard already overburdened with travel according to the many representations made to this Commission, is the Tamiami Trail from Miami to Tampa and thence North via the West Coast of Florida. So, in justice to the East Coast itself, affording only reasonable facilities for normal growth in the very near future, I think that first class *through* bus transportation should be provided to and from Miami over the Tamiami Trail and the excellent highway system of West Florida.

"The application of Tamiami Trail Tours, Inc., contemplates *through* bus transportation to and from Miami via the Tamiami Trail, Tampa, Dunnellon, Williston, Perry, Tallahassee, and the Georgia-Florida State line; and the extension of this through bus transportation into Atlanta, thence into the great cities of the Northwestern and Central States in interstate commerce. The record in this case discloses such anticipated service, even though the application be for an intrastate certificate. The Commission also has before it an application for approval of assignment of a certificate to Tamiami Trail Tours, Inc., covering a bus operation into Georgia with connections to Atlanta and the populous cities of the North and West. So, in my opinion,

the proposed service offered by Tamiami Trail Tours, Inc., offers to the West Coast of Florida a *through* bus service via Tampa, and over the Tamiami Trail into Miami, equal to the bus service already enjoyed down the East Coast. And, in my opinion, the lower East Coast is entitled to this additional means of growth and development. The intervening West Coast would then naturally enjoy a *through* bus system that cannot possibly be initiated and developed on local travel alone. Tourist and through travel are absolutely essential to the successful operation of a first class bus system on the West Coast of Florida, the same as it is on the East Coast. Not one-tenth of the bus service now enjoyed by the East Coast cities could be operated were it dependent on local travel alone. I think that the East Coast would materially benefit from a *through* bus system into Miami via the Tamiami Trail, and directly from the great cities of the Northwestern and Central States, and I know that the West Coast of Florida could enjoy a first class *through* bus system via Tallahassee (The State Capital and site of the Florida State College of Women), by virtue of being supplemented by revenues from such tourist and through travel, such as it is not now enjoying.

"In my opinion, Tamiami Trail Tours, Inc., has amply shown public convenience and necessity for the Certificate it applied for. This finding undoubtedly was also made by the majority of the Commission, for an improved service (but with several interchanges of buses) has been ordered. Of course, I do not disapprove of any improvement of bus service, but I think that the continuous through service afforded by the applicant is far superior, and will mean more for the territory in question, than the service which the majority of this Commission has ordered—for that service does not constitute a *through* service, but consists

of the joint services of four separate bus companies necessitating equally as many stop-overs or interchanges between buses by a passenger traveling the route.

"At the time Tamiami Trail Tours, Inc., made its application there was no adequate service between Tampa and points South of Tampa, to Tallahassee and the north."

The Commission in its Order No. 811 denied the application of both Whiting and Hayes and of Tamiami Trail Tours, Inc., for certificate of public convenience and necessity covering the route from Tampa via Dunnellon, Williston, Cross City, Perry and Tallahassee.

In the opinion it is said:

"While the evidence in this case tends to show that that part of the 'public' residing in that territory between Tampa and Fort Myers and Miami, known as the West Coast of Florida, is suffering to some extent from a lack of through transportation facilities that would enable it to promptly reach Tallahassee and contiguous territory in West Florida, and that such a through service as is proposed by Tamiami Trail Tours, Inc., would be of great convenience to this part of the public, yet this Commission is unable to say that an affirmative showing has been made before it 'that public convenience and necessity of the public,' whose interest is paramount in such cases, demands the granting of a new service that will tend to impair the existing competitive advantage enjoyed by the Florida Motor Lines, Inc., and Gulf Crescent Motor Lines, Inc., which companies almost completely occupy this particular field of transportation."

The finding of fact as stated in the last above quoted paragraph is, in effect, a finding that under the law as heretofore construed by this Court, the Petitioner, Tamiami Trail Tours, Inc., had met the burden resting upon it as a

basis for having issued to it a certificate of public convenience and necessity covering the route over which it proposed to operate.

The record amply supports the contention that the Commission departed from the essential requirements of law in denying the petition of Tamiami Trail Tours, Inc., for a certificate of public convenience and necessity and, therefore, the Order denying the same should be quashed.

The writ of certiorari is awarded. The motion to dismiss is denied and the order of the Railroad Commission sought to be reviewed is quashed.

So ordered.

ELLIS, C. J., and WHITFIELD, TERRELL, BUFORD and DAVIS, J. J., concur.

BROWN, J., concurs in conclusion.

## ON REHEARING.

PER CURIAM.—Petition for rehearing has been filed pursuant to our opinion and judgment filed herein on March 11, 1937.

It appears from the contents of the petition for rehearing that counsel has misconceived the force, effect and purport of our said opinion and judgment.

On certiorari the appellate court only determine whether or not the tribunal or administrative authority whose order or judgment is to be reviewed has in the rendition of such order or judgment departed from the essential requirements of the law and upon that determination either to quash the writ of certiorari or to quash the order reviewed.

When the order is quashed, as it was in this case, it leaves the subject matter, that is the controversy pending before the tribunal, commission or administrative authority as if no order or judgment had been entered and the parties

stand upon the pleadings and proof as it existed when the order was made with the rights of all parties to proceed further as they may be advised to protect or obtain the enjoyment of their rights under the law in the same manner and to the same extent which they might have proceeded, had the order reviewed not been entered.

The appellate court has no power when exercising its jurisdiction in certiorari to enter a judgment on the merits of the controversy under consideration, nor to direct the respondent to enter any particular order or judgment.

Our opinion and judgment above referred to determined only that the petitioner, Tamiami Trail Tours. Inc., had met the burden resting upon it as a basis for having issued to it a certificate of public convenience and necessity covering the route over which it proposed to operate and that the existence of *prima facies* of such right had not been overcome.

The petition for rehearing is denied.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.

DAVIS, J. (concurring specially).—Certiorari, whether addressed to a Court or to the Railroad Commission acting after the course of judicial procedure in the administration of a quasi legislative power, is nonetheless an appellate procedure in substance. It is impliedly so recognized where referred to in our statutes. See Section 4605 C. G. L., 2900 R. G. S.

Certiorari is a judicial means by which an inferior tribunal's decisions, interlocutory as well as final, may be revised in cases where no other form of judicial remedy is applicable. See: NOTES 40 Am. St. Rep. 35, 82 Am. St. Rep. 355. Whatever is decided as "matter of law" on a writ of certiorari becomes, from that time on, by virtue of the

superior court's determination of it, the "law of the case" insofar as the pending controversy is concerned on the then established state of the record, and such "law of the case" must be observed by the inferior tribunal with reference to any further proceedings had in the inferior tribunal after the latter's order or judgment has been quashed pursuant to such certiorari, although other and not inconsistent proceedings may be had, and further decisions made in the cause after remand of the record, insofar as the latter are not violative of the "law of the case" as established in the decision of the higher court. Ulsch v. Mountain City Milling Co., 103 Fla. 932, 140 Sou. Rep. 218.

The "law of the case" as decided and fixed in an opinion of the Supreme Court rendered in a certiorari proceeding quashing an order of the Railroad Commission becomes a part of the record of the case after it is remitted back to the Railroad Commission, and binds the Commission just as a Supreme Court decision in any other judicially decided controversy becomes the "law of the case" in that controversy from the time of the decision forward. But since the only judgment that the Supreme Court can render on certiorari is one quashing either the writ of certiorari or the judgment to which it is directed, the record of the cause must be remitted back to the inferior tribunal which may have further proceedings or render a new or further order in the proceeding of any character that to it seems fit, so long as it adheres to the "law of the case" as comprehended in the character and scope of the Supreme Court's decision by which it becomes bound upon the remand of the record.

Thus, while the Commission has no power to make any decision, or take any further step, at variance with the "law of the case" as expressed in the Supreme Court's opinion and judgment in a certiorari proceeding directed to it, it is

not foreclosed nor inhibited as to other points of controversy than those decided, nor precluded from reopening the record in appropriate cases for further proceedings and hearings not inconsistent with what the Supreme Court has decided to be the "law of the case" in the pending proceeding. Should the Commission depart from the intendment and controlling effect of the "law of the case" as so fixed in the Supreme Court's opinion and judgment, either as to its decision on the existing record, or by any new or further step in the cause, mandamus is an available remedy to coerce obedience to the law as decided by the supperior court and to carry the latter's decision into effect through the making of appropriate final disposition of such controversy. See: State v. Parks, 99 Fla. 1264, 128 Sou. Rep. 837.