CENTRAL TRUCK LINES, INC., a Corporation, *et al.*, Petitioners, v. RAILROAD COMMISSION OF THE STATE OF FLORIDA, and TOM H. BLOWERS, Respondents.

1 So. (2nd) 470
En Banc
Opinion Filed April 1, 1941

*John M. Allison, Clifford T. Inglis* and *McCarthy Crenshaw,* for Petitioners;

*Theo T. Turnbull* and *Wm. P. Simmons, Jr.,* for Respondents.

CHAPMAN, J.—On October 16, 1940, after due hearing to all interested parties, the Railroad Commission of the State of Florida entered its order No. 1324 whereby Tom H. Blowers was granted certificates of public convenience and necessity as a private contract carrier and was authorized thereby to haul packing house .products of Armour & Company, Cudahy Packing Company, and Swift & Company out of the City of Tampa over routes, viz.: (a) North over Road 5 to Dunnellon and return via State Road 22 to Bushnell and State Road 2 to Dade City, serving off-line points at Webster, River Land, Trilby and Lacoochee, thence west out of Dade City to State Road 5 at a point north of Denham, thence south into Tampa; (b) south out of the City of Tampa on either State Road 5 or 23 to Palmetto, thence over State Road 5 to Fort Myers and return, serving off-line points Bee Ridge, Inglewood, Woodmore, Fruitville and Oneco; (c) east out of the City of Tampa over State Road 79 to Mulberry, Bartow and Lake Wales, thence South over State Road 8 to Sebring, thence to Avon Park and over State Road 32 to either Wauchula or Zolfo Springs, and thence over State Road 2 to Arcadia and Nocatee, thence over State Roads 18 and 16 to

Bradenton, thence north to Tampa over either Road 5 or 23.

On petition for a writ of certiorari the said order dated October 16, 1940, is sought to be reviewed in this Court, and it is made to appear (1) that the Central Truck Lines, Inc., is a certificated motor freight common carrier of property operating between Tampa, Inverness, Brooksville, Bushnell, Dade City and intermediate points and is using State Roads 2, 5 and 22 under certificates of public convenience and necessity issued by the Railroad Commission of the State of Florida; (2) the Hunt Trucking Company is a certificated motor freight common carrier of property operating between Tampa, Mulberry, Bartow, Lake Wales and Sebring and using State Roads 8 to 79 under certificates of public convenience and necessity issued by the Railroad Commission of the State of Florida; (3) the Tamiami Trail Tours, Inc., is a certificated motor freight common carrier operating between Tampa and Fort Myers, using State Roads 5 and 23 under certificates of public convenience and necessity issued by the Railroad Commission of the State of Florida; (4) the Flamingo Truck Lines, Inc., is a certificated motor freight common carrier of property operating between Tampa and Bradenton, Sarasota, Bartow, Mulberry and Lake Wales, using State Roads 5, 23, and 79 under certificates of public convenience and necessity issued by the Railroad Commission of the State of Florida; (5) St. Johns River Line Company is a certificated motor freight common carrier of property operating between Tampa and Bradenton, Sarasota, Mulberry, Bartow, Avon Park, Lake Wales and Sebring, and using State Roads 5, 8, 23 and 79, by virtue of certificates of public convenience and necessity issued by the Railroad Commission of the State of Florida; (6) Fogarty Brothers Transfer, Inc., is a certificated motor freight common carrier of property

operating between Tampa and Bradenton and Sarasota, using State Roads 5 and 23, by virtue of certificates of public convenience and necessity issued by the Railroad Commission of the State of Florida.

An inspection of a map of the Tampa area disclosing the several State roads connecting the several towns and intermediate points, coupled with a description of the area described in the order here challenged and dated October 16, 1940, show that the respective routes are identical with or are the routes covered by the private contract carrier and those now being served by the common carriers. One of the reasons advanced for the granting of certificates of public convenience and necessity to the private contract carrier is that better service will be afforded the area than now offered by the lines of the common carrier, in that better mechanical refrigeration units will be employed, but the financial ability to provide the additional refrigeration units on the part of the common carrier is admitted; the packers have never requested the common carrier lines, as shown by the record, to better equip their refrigeration units, or protested that the rates prescribed by the Railroad Commission and controlling the carriers is unreasonable or unjust.

It is contended that the Railroad Commission in entering its order No. 1324 did not proceed according to the essential requirements of the law, but that such order exceed the jurisdiction of the Railroad Commission and is illegal and contrary to Section 4 of Chapter 14764, Acts of 1931, Laws of Florida, and Section 1335 C. G. L., Fla. Perm. Supp.
. The constitutionality of Chapter 14764, Acts of 1931, *supra*, was sustained in the case of Riley v. Lawson, 106 Fla. 521, 143 So. 619. An order made by the Railroad Commission of Florida under Chapter 14764, *supra*, may be reviewed on certiorari. See Seaboard Air Line Ry. v.

Wells, as Chairman of Railroad Commission, 100 Fla. 1027, 130 So. 587; Florida Motor Lines v. Florida Railroad Commission, 101 Fla. 1018, 132 So. 851; Atlantic Shell Co. v. Welded Steel Products Co., 98 Fla. 6, 122 So. 787; Atlantic Coast Line R. Co. v. Florida Fine Fruit Co., 93 Fla. 161, 112 So. 66; American Ry. Exp. Co. v. Wetherford,. 86 Fla. 626, 98 So. 820.

The highways of Florida, prior to 1929, were used by the owners of cars, buses, trucks and other motor vehicles without regulation. The system of highways was constructed by the people of Florida at the cost of millions of dollars. The protection of the investment and the right to use the highways in transportation of property was a field of legislation not then considered by the Legislature of Florida. Chapter 13700, Acts of 1929, Laws of Florida, was a highway regulatory measure and many powers thereby were conferred upon the Railroad Commission. This Court, in the case of Cahoon v. Smith, 99 Fla. 1174, 128 So. 632, upheld the Act as constitutional and valid Act of the Legislature of Florida.

Chapter 13700, *supra*, regulated the use of all motor vehicles on the highways of Florida, but excepted therefrom motor vehicles engaged exclusively in transporting agricultural, horticultural, dairy and other farm products from the point of production to the primary market. On writ of error to the United States Supreme Court (Smith v. Cahoon, 283 U. S. 553, 51 Sup. Ct. 582, 75 L. Ed. 1264) it was contended, among other things, that Chapter 13700, *supra*, offended against the equal protection of the laws and was discriminatory and the United States Supreme Court, in sustaining this contention, with others, in part said (text 283 U. S. 567) :

"But in establishing such a regulation, there does not appear to be the slightest justification for making a dis-

tinction between those who carry for hire farm products, or milk or butter, or fish or oysters, and those who carry for hire bread or sugar, or tea or coffee, or groceries in general, or other useful commodities. So far as the statute was designed to safeguard the public with respect to the use of the highways, we think that the discrimination it makes between the private carriers which are relieved of the necessity of obtaining certificates and giving security, and a carrier such as the appellant, was wholly arbitrary and constituted a violation of the appellant's constitutional right. 'Such a classification is not based on anything having relation to the purposes for which it is made.' Air-Way Corp. v. Day, 266 U. S. 71, 85; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 563, 564; Southern Ry Co. v. Greene, 216 U. S. 400, 417; Truax v. Corrigan, 257 U. S. 312, 332, 333; Louisville Gas & Electric Co. v. Coleman, 277 U. S. 32, 37."

The Legislature of Florida, at the 1931 session, to over-come the several objections of the United States Supreme Court as enumerated in Smith v. Cahoon, *supra,* enacted Chapter 14764, and the pertinent and material provision necessary for a decision of the case at bar is Subsection 5 of Section 4, viz.:

"5 . . . At the time specified in said notice, or at such time as may be fixed by the Commission, a public hearing upon said application shall be held by the Commission. At or after such hearing the Commission may issue a Certificate of Public Convenience and Necessity, as prayed for or refuse to issue the same, or may issue the same with modifications, or upon such terms and conditions as in its judgment the public convenience and necessity may require; provided, that the Commission in granting any such certificate shall take into consideration the effect that the granting of such certificates may have upon transportation facilities

within the territory sought to be served by said applicant, and/or congestion of traffic moving on the highways under such operations in relationship to other private and/or public traffic permitted by law to move over the same roads or in the same territory, and also the effect upon transportation as a whole within said territory."

In the case of Riley v. Lawson, 106 Fla. 521, 143 So. 619, the constitutionality of Chapter 14764, Acts of 1931, Laws of Florida, was by this Court upheld and sustained against attacks on numerous grounds. This Court, in construing the pertinent provisions of Section 4, *supra,* in part said:

"In granting certificates of public convenience and necessity to private contract carriers, where the carriage consists of continuous or recurring carriage under the same contract, the Commission in granting any such certificates is required to take into consideration: (a) the effect that the granting of such certificates may have upon transportation facilities within the territory sought to be served by the applicant; (b) congestion of traffic on the highway likely to be caused by the granting of the certificates; (c) the effect that the granting of the certificates will have on the safety of traffic moving on the highways under such operations in relationship to other private or public traffic permitted by law to move over the same road or in the same territory; (d) the adverse effect, if any, the granting of the certificates will have upon transportation as a whole within said territory. See Section 4, Chapter 14764, *supra.* . . .

"Applying the foregoing rule of construction to the instant statute, it appears that the proper construction of said Chapter 14764 is that the Railroad Commission, in considering applications under Section 4 of the Act, for certificates of public convenience and necessity for operations by private contract carriers for compensation on any public highway in this State, is required to determine as a

condition precedent to the granting of such certificates, whether or not the public convenience and necessity of maintaining and protecting existing transportation systems in the State, and of fostering a fair distribution of traffic on the highways to the end of maintaining all necessary facilities and not inconveniencing the public by inordinate uses of its highways for purposes of gain, will be infringed upon or defeated in any of the statutory particulars hereinbefore mentioned as being required to be considered by the Commission before any such certificates are granted. . . .

"*Public convenience and necessity,* as that term is used in the statute with reference to private contract carriers, means nothing more than a finding by the Commission that, taking into consideration the stated statutory factors required to be considered as the basis for granting certificates to private contract carriers, the public convenience and necessity for adequate transportation as a whole in the territory involved, will not be unduly burdened or defeated by an inordinate use of the public highways by private contract carriers as a class, considered in relation to the necessary uses of the highways by other classes of motor vehicle traffic, and the necessity for carrying out and protecting the State and national policy of always maintaining adequate systems for the transportation by rail.

The statute specifically lays down in terms what factors shall be considered in determining public convenience and necessity for granting certificates to private contract carriers for haulage in continuous and recurring carriage under their contracts. Whether or not there are factual considerations which exist with reference to the particular business of appellee, which would warrant or require the Commission to deny it a certificate under the foregoing rule of detention, is a question which must be decided in the first instance by the Railroad Commission. Until resort is first had to

the Commission, the courts are without appropriate basis for exercising their jurisdiction to protect any right which the appellee may have to assert to the use of the highways for the purpose of his particular class of carriage."

The testimony disclosed that the private contract carrier would operate a weekly schedule over the Brooksville-Inverness-Webster-Dade City route, and twice a week schedule as to the remaining portion of the area. The Central Truck Lines had incurred considerable expense in constructing facilities in the form of cooling houses to more adequately accommodate the shipper and the public. Some of the common carriers were equipped with adequate refrigeration facilities and others were willing and able to supply by purchase the additional equipment. These common carriers were maintaining daily services to all points of the territory and the packers had never requested of these carriers a reduction of the rates then in force or complained to the Railroad Commission as to the service rendered or the rate charged.

It was the conclusion of two members of the Commission that Section 4 of Chapter 14764, *supra,* required and made it obligatory upon the Commission not only to consider the transportation needs of the general public of the area but this public need and interest should be subserved prior to a consideration of then existing transportation facilities of the questioned area, while the third member of the Commission had a contrary view and in a dissenting opinion held that the issuance of Order No. 1324 made the operation unfair to common carriers then engaged in transportation in the area and bottomed his holding on State *ex rel.* National Trucking Co. v. Lee, 139 Fla. 832, 191 So. 17.

As pointed out in Riley v. Lawson, *supra,* the Legislature, in the enactment of Chapter 14764, *supra,* intended to regulate the use of the highways by motor vehicles operating

for compensation and in so doing placed a limitation on the business activities of motor vehicles operating for hire so that the highways of Florida, constructed at an enormous cost, coupled with the continuous maintenance thereof, could be protected and safeguarded for the enjoyment, welfare and benefit of the people of Florida. The enforcement of the regulation provided for in the Act was placed in the Railroad Commission. It has the jurisdiction conferred by the Act to regulate the use of the highways.

This Court in Riley v. Lawson, *supra,* in construing the Act, held that the Railroad Commission should observe certain rules and principles of law granting certificates of convenience and necessity to private contract carriers, viz.: "(a) the effect that the granting of such certificates may have upon transportation facilities within the territory sought to be served by the applicant; (b) congestion of traffic on the highway likely to be caused by the granting of the certificates; (c) the effect that the granting of the certificates will have on the safety of traffic moving on the highways under such operation in relationship to other private or public traffic permitted by law to move over the same road or in the same territory; (d) the adverse effect, if any, the granting of the certificates will have upon transportation as a whole within said territory."

The yardstick, or rules of regulation as enacted by the Legislature and upheld by this Court do not permit or allow the Railroad Commission in the granting or withholding of certificates of convenience and necessity to private contract carriers to take into consideration the transportation needs of any particular community as was done by the majority Order No. 1324 adopted by the Commission on October 16, 1940, but the basis of such order must be sustained by Chapter 14764, *supra.* The reasons for the conclusion of the order may be sound and wise from the standpoint of

business policy and calculated to advance the common interest and promote the welfare of the people of the respective communities, but the Legislature did not confer such authority or power on the Railroad Commission by the enactment of Chapter 14764.

In the case of Seaboard Air Line Ry. Co. v. Wells, Chairman of the Railroad Commission, 100 Fla. 1027, 130 So. 587, the Railroad Commission issued to the Union Bus Company a certificate of convenience and necessity authorizing it to operate a motor bus service over the highways on night schedule between Jacksonville and Pensacola. Highway No. 1, over which the Union Bus Company operated and transported passengers between Jacksonville and Pensacola, paralleled the railroad lines of the Seaboard Air Line Railway Company and the Louisville & Nashville Railroad Company between these points. On petition for writ of certiorari in this Court to reverse the order of the Railroad Commission, it was contended that the Railroad Commission failed and omitted to take into consideration at the time of granting said certificates to the Union Bus Company: (a) the depletion of the revenues of the railroads then serving the territory; (b) the protection of the highways from needless and unnecessary use; (c) the prevention of ruinous competition; (d) that adequate transportation service was being supplied; (e) the schedules, traffic congestion and unnecessary use of the highways. Although this Court was construing at the time Chapter 13700, Acts of 1929, later held unconstitutional by the United States Supreme Court, we held that the challenged order of the Railroad Commission did not give due consideration to the then existing railroad service over the route between Jacksonville and Pensacola and quashed the said order granting the certificates of convenience and necessity issued to the Union Bus Company.

The case at bar has many counterparts of Seaboard Air Line v. Wells, Chairman of Railroad Commission, *supra,* and, while the order challenged is bottomed on a subsequently enacted statute, many of the provisions of Chapter 13700 were incorporated in and made a part of Chapter 14764. It is our conclusion that Order No. 1324 adopted October 16, 1940, by a majority of the members of the Railroad Commission is not authorized or sustained by the provisions of Chapter 14764, or any reasonable inference deductable therefrom and for said reason Order No. 1324 is hereby quashed.

It is so ordered.

BROWN, C. J., WHITFIELD, TERRELL, BUFORD, THOMAS and ADAMS, J. J., concur.