**FLORIDA MOTOR LINES CORPORATION, a Florida Corporation, v. W. B. DOUGLASS, et al., (Georgia-Florida Coaches Inc.)**

7 So. (2nd) 843                                                        En Banc
December 9, 1941                          On Rehearing April 28, 1942

2

Milam, McIlvaine & Milam, for petitioner.

Theo T. Turnbull, for respondents.

A. Pickens Coles, and W. H. Wilson, Jr., as Amicus Curiae.

BUFORD, J.:

Florida Motor Lines Corporation, a Florida corporation, presented its petition here for writ of certiorari to be directed to the Railroad Commission of the State of Florida and prays this Court in due and regular course to give consideration to the matters and things alleged and upon consideration of same to enter its order quashing that certain order of the Railroad Commission entered on April 30, 1941, a copy of which is attached to the petition for certiorari identified as Order No. 1452 Docket No. 769, wherein it was ordered:

"Wherefore, It Is Considered, Ordered and Adjudged by the Railroad Commission of the State of Florida that the application of Georgia-Florida Coaches, Inc., for a Certificate of Public Convenience and Necessity authorizing it to transport passengers, baggage, newspapers and light express between the Georgia-Florida state line and Williston via Lake City, Lake Butler, Gainesville and Archer over State Highways Nos. 82, 2, 1, 28, 49, 99, 13 and 5, be and the same is hereby granted.

"It is further Ordered that the applicant and Florida Motor Lines Corporation and Tamiami Trail Tours, Inc., be and they are hereby required to interchange passengers at Williston; and that the applicant and Florida Motor Lines Corporation be and they are required to interchange passengers at Gainesville; and that the applicant, and Florida Motor Lines Corporation, Union Bus Company and Southeastern Greyhound Lines be and they are hereby required to interchange passengers at Lake City, Florida.

"Done and Ordered by the Railroad Commission of the State of Florida, in session at its office in the City of Tallahassee, Florida, this 30th day of April, 1941."

The Order of the Railroad Commission, supra, recited:

"1. This matter, pursuant to Notice No. 773 came on for formal hearing before the Railroad Commission of the State of Florida at its Hearing Room, Supreme Court Building, Tallahassee, Florida, on Wednesday, April 23, 1941. The following appearances were entered:

"A Pickens Coles, Tampa Theatre Building, Tampa, Florida; W. H. Wilson, Jr., Lake City, Florida; and Sam T. Dell of Gainesville, Florida, for applicant.

"A. Y. Milam, Jacksonville, Florida, for protestants, Florida Motor Lines Corporation and Gator Motor Lines, Inc.

"Ben A. Meginniss of Tallahassee, Florida, for Southeastern Greyhound Lines."

"2. Upon the calling of the application for hearing, Florida Motor Lines Corporation, through its counsel, offered a motion to dismiss the application on the grounds that there was no financial statement attached to the application; that there was no description of equipment proposed to be operated, and that no schedules were submitted with the application. It was contended that the failure on the part of the applicant to set out these matters was jurisdictional, and that the Commission, therefore, had no jurisdiction to hear the application at this time. This Motion was denied.

"3. The applicant, Georgia-Florida Coaches, Inc., holds franchise rights between Augusta, Georgia, and Lake City, Florida. It obtained these franchise rights through the consolidation of Service Coach Lines, Inc., which operates between Augusta, Georgia, and McRae, Georgia, and Atlantic Stages, which operates intrastate from McRae to the Georgia-Florida line, and interstate within Florida from the Georgia-Florida line, to Lake City. This merger has been approved by the Georgia Public Service Commission and through this approval the applicant now has intrastate rights in Georgia. Application has also been filed with the Interstate Commerce Commission

for approval of this consolidation but no order has been rendered by the Interstate Commerce Commission. When, and if, the Interstate Commerce Commission approves this consolidation and merger, the applicant, Georgia-Florida Coaches, Inc., will have interstate rights between Augusta, Georgia, and Lake City, Florida, and will also have intrastate rights within Georgia. This application has been filed with the Florida Railroad Commission to obtain a Certificate of Public Convenience and Necessity authorizing this company to operate in intrastate commerce, between the Georgia-Florida State Line and Williston, Florida, serving Lake City, Lake Butler, LaCrosse, Gainesville and Archer.

"George T. Morris of Dublin, Georgia, who is President of the applicant corporation is also President of Service Coach Lines, Inc., and J. A. Booker, of Savannah, Georgia, is Secretary and Treasurer of the applicant corporation, and is the owner of Atlantic Stages. W. H. Wilson, Jr., of Lake City, Florida, is Vice President of the applicant corporation.

"4. The applicant, at the hearing, offered its Financial Statement as its Exhibit 2, and also testified that the applicant now owns two busses, a twenty-five passenger yellow coach and a twenty-five passenger Flexible Clipper. The President of the corporation testified that the company was financially able to purchase the requisite number of busses necessary for this operation, and to carry on the operation, if this application is granted. The application also filed schedules showing its proposed service over this route.

"It was also shown that over the route between Georgia-Florida state line and Lake City Atlantic Stages now operates, in interstate commerce, and over

a short portion of said route north of Lake City Union Bus Company or Southeastern Greyhound Lines operate. Between Lake City and Lake Butler Gator Motor Lines, whose certificate is now owned by Florida Motor Lines Corporation, and the Union Bus Company, now operate. Between Lake Butler and the junction of Road No. 99 and state road No. 2, just north of Gainesville, no common carrier bus line operates between the junction of roads 99 and 2 into Gainesville. Between Gainesville and Archer and Williston Florida Motor Lines Corporation now operates.

"5. The applicant produced a number of witnesses from the various communities to be served by this operation, many of them the most prominent citizens of their respective communities, who testified that in their opinion public convenience and necessity required this service, and that such service would be of great benefit to the territory involved.

"Certified copies of Resolutions adopted by the Boards of County Commissioners of several of the counties through which this operation would be conducted, and by the City Commissioners of the various cities to be served, were presented and filed in evidence. Resolutions were also presented by numerous Civic Clubs of the cities through which this line runs which were filed with the Commission and put in its correspondence file. Testimony was also produced to show the advantage of this line as a through route.

"The applicant filed its Exhibit No. 3, which showed the schedule for this through route. It proposes two round trips—one leaving Augusta at 6:30 A. M. arriving Williston 4:40 P. M. The other leaving Augusta 10:30 A. M. arriving Williston 8:40 P. M., and return-

ing, one leaves Williston 10:00 A. M. and arrives Augusta 8:00 P. M., the other leaving Williston 7:25 P. M., arriving Augusta 5:25 A. M. It also proposes certain local schedules between Gainesville and Williston and between Lake City and Gainesville, as follows:

| "Southbound read down | | | | Northbound read up | |
|---|---|---|---|---|---|
| "PM | PM | | AM | | PM |
| "8:00 | 4:00 | Gainesville | 10:40 | | 8:05 |
| 8:25 | 4:25 | Archer | 10:15 | | 7:40 |
| 8:40 | 4:40 | Williston | 10:00 | | 7:25 |
| PM | PM | | AM | | PM |

| "PM | PM | AM | | PM | PM | PM |
|---|---|---|---|---|---|---|
| "6:10 | 2:10 | 8:00 | Lake City | 12:30 | 4:55 | 9:55 |
| 6:55 | 2:55 | 8:45 | Lake Butler | 11:45 | 4:10 | 9:10 |
| 8:00 | 4:00 | 9:55 | Gainesville | 10:40 | 3:00 | 8:05 |

"6. Florida Motor Lines Corporation, protestant, objected to the granting of this application on the ground that it serves several of the specific routes sought, and also serves the general territory involved. It also made a tender of service over such portions of the route as it did not serve in the event that the Commission found that public convenience and necessity required the service. The evidence, however, shows that the service rendered by the Florida Motor Lines between Williston and Lake City via Newberry and High Springs is operated with closed doors. It also proposed certain schedules by which it could serve this particular territory.

"7. The Commission has carefully considered the record in this case, and the needs of the various communities involved, and finds:

"(a) That the through service from Augusta, Georgia, through Lake City to Williston, Florida, if proper interchanges are made at Williston, Gainesville and Lake City, will be of great benefit not only to this particluar territory but to the traveling public of the Tampa, St. Petersburg and Orlando territory who desire to make use of the service.

"(b) That there is at present no services directly between Lake Butler and Gainesville by which the communities of Worthington Springs and La Crosse can be served and public convenience and Necessity require this service.

"(c) That, the applicant and Florida Motor Lines Corporation and Tamiami Trail Tours, Inc., be directed to interchange passengers at Williston; and the applicant and Florida Motor Lines Corporation be directed to interchange passengers at Gainesville, and that the applicant and Florida Motor Lines Corporation, Union Bus Company and Southeastern Greyhound Lines be required to interchange passengers at Lake City."

In Florida Motor Lines Corporation v. Railroad Commission, et al., 101 Fla. 1018, 132 Sou. 851, we held:

"The authority to determine the nature and extent of bus and truck service for compensation, on the public highway that should be permitted, is by the statute committed to the Railroad Commission, subject to such limitations as are afforded by the rather general provisions of the statute and to the provisions and principles of law that secure public and private

rights against an arbitrary exercise or abuse of governmental authority, through appropriate judicial review in accord with the organic provision that right and justice shall be administered by due course of law.

"The findings and conclusions of the Railroad Commissioners under Chapter 13700, Laws of Florida, may be reviewed on certiorari, but such review is not appellate to determine whether error was committed in such findings and conclusions, as where writ of error or appeal is authorized and used.

"The review on certiorari is to determine whether an order as made by the Railroad Commission is illegal as matter of law or was made without observing the provisions of law regulating the matters to be considered or the procedure for the findings and conclusions, or whether in its operation the order will violate organic or fundamental rights, or is merely arbitrary without sufficient support in the evidence or proceedings had.

"If there is substantial competent evidence that is legally sufficient to support the findings and conclusions of the Railroad Commission, and no rule of law was violated in the proceedings, and the whole record does not show an abuse of authority or arbitrary action, the findings and conclusions of the Railroad Commission will not be set aside on certiorari, even though the reviewing court might have reached different conclusions on the evidence.

"Where the essential provisions of an order of the Railroad Commission are not clearly shown to violate the intendments of the statute under which it was made, or to violate any organic or statutory rights, a writ of certiorari issued to review the order will be quashed."

By perusal of the record we find that it discloses substantial evidence to sustain the findings and order of the Commisison.

It appears, however, that on the hearing at which said order was granted, petitioner moved to dismiss the application of Georgia-Florida Coaches, Inc., on several grounds, amongst which were the following:

"(b) The application contained no description of the motor buses proposed to be used including the seating capacity thereof and, specifically, the size and weight of such vehicles, as required by Section 3, subparagraph (3), of Chapter 14764, and by paragraph 8 of the respondent Commission's form (Petitioner's Ex. 'D');

"(c) The application contained no statement of the proposed time schedule of operation showing frequency of use of the highways as specifically required by Section 3, subparagraph (4) of Chapter 14764, Acts of 1931."

Section 3 of Chapter 14764, Acts of 1931, inter alia, provides as follows:

"Section 3. No auto transportation company shall operate any motor vehicle for the transportation of persons or property as a common carrier for compensation on any public highway in this State without first having obtained from the Railroad Commission a Certificate that Public Convenience and necessity requires such operation.

Application for such Certificate of Public Convenience and necessity for common carriage made by any auto transportation company shall be in writing verified by the applicant and shall specify the following matters:

"1. The name and address of the applicant and the names and addresses of its officers, if any.

"2. The public highway or highways over which and the fixed termini or the regular route, if any, between which or over which applicant desires to operate.

"3. The kind of transportation, whether passenger or freight, or both, in which applicant intends to engage, together with a brief description of each vehicle which applicant desires to use, including the seating capacity thereof, if buses, or the tonnage thereof, if trucks, and including specifically the size and weight of such vehicle.

"4. The proposed time schedule of operation.

"5. An agreement on the part of the applicant to conform with and abide by all tariffs and classifications as to freight or passenger carriage which may be prescribed by the Commission from time to time."

The record shows the application did not contain a description "of each vehicle which applicant desires to use, including the seating capacity thereof, if buses . . . and including specifically the size and weight of such vehicles." Neither did it show the proposed time schedule of operation.

The record does show, however, that at the hearing the applicant offered its financial statement, which was received, and also proffered its time schedules, and also showed that it owned two buses, one being a twenty-five passenger yellow coach and the other a twenty-five passenger Flexible Clipper.

The record also shows that the President of the Corporation also testified that the Company was fi-

nancially able to purchase the requisite number of buses necessary for the operation of the schedule proposed.

We recognize it to be true that the jurisdiction of the Railroad Commission must be invoked in the manner provided by statute and it is not authorized to proceed except in conformity with the statutes. Central Truck Lines, et al., v. Railroad Commission, et al., 118 Fla. 555, 160 Sou. 26; Central Truck Lines, et al., v. Railroad Commission of Florida, 146 Fla. 521, 1 Sou. (2nd) 470; Florida Motor Lines v. State Railroad Commission, 101 Fla. 108, 132 Sou. 851. We cannot agree with the contention of counsel, however, that the Railroad Commission was entirely without jurisdiction because of the failure of the applicant to comply with the statute as herein above stated at the time of filing its application. The Railroad Commission was within its jurisdiction to allow those items of information to be filed at the hearing and before it acted on the application. It was necessary for the Railroad Commission to have the stated information before it in order to be warranted in granting the application. It is not shown that any prejudice accrued to any other carrier by reason of such lack of compliance on the part of the applicant at the time of filing the application. The jurisdictional requirements were met before the Commission assumed to adjudicate the application.

The Relator also contended before the Commission, and contends here, that the Commission was without jurisdiction because certain blanks furnished by the Railroad Commission upon which applications of this sort are to be made had not been filled out and did not show all the information which the blanks indi-

cated will be required. The use of such blanks is not jurisdictional and on certiorari we do not go further than to determine whether or not the Commission has departed from the essential requirements of the law.

Our conclusion is that the orders made are not shown to be illegal or unauthorized or in abuse of reasonable discretion conferred upon the Railroad Commission and that there has not been made to appear a fatal departure from the requirements of law.

For the reasons stated, certiorari is denied.

So ordered.

BROWN, C. J., WHITFIELD, TERRELL, CHAPMAN, THOMAS and ADAMS, JJ., concur.

### ON REHEARING

CHAPMAN, J.:

On April 30, 1941, by Order No. 1452 the Florida Railroad Commission awarded a Certificate of Public Convenience and Necessity to the Georgia-Florida Coaches, Inc. The order authorized the Georgia-Florida Coaches, Inc., to transport passengers, baggage, newspapers and light express between the *Georgia-Florida State Line* and Williston, Florida, via Lake City, Lake Butler, Dukes, Worthington Springs, La Crosse, Gainesville and Archer over State Highways Nos. 82, 2, 1, 28, 49, 99, 13 and 5. The Georgia-Florida Coaches, Inc., now holds franchise rights between Augusta, Georgia, and Lake City, Florida, intrastate commerce rights within the State of Georgia, and interstate commerce rights between Augusta, Georgia, and Lake City, Florida. The aforesaid order grants the right to operate in intrastate commerce between the *Georgia-Florida State line* and

Williston, Florida, while an order of the Georgia Public Service Commission authorized it to operate between McRae, Georgia, and the Georgia-Florida State line.

The Florida Railroad Commission heard testimony offered in support of the application and in opposition thereto. Some forty or more witnesses appeared and testified that they resided in the territory from the Georgia-Florida State line to Lake City and via Lake Butler, Dukes, Worthington Springs, La Crosse, Gainesville, Archer to Williston and that transportation services were needed in such territory. Resolutions adopted by the several civic clubs of Gainesville and Lake City, inclusive of the Boards of Trade, pointed out the lack of transportation facilities over the territory. Likewise resolutions of approval were adopted by the County Commissioners of Levy County and the City Commissioners of the Towns of Bronson, Williston and Archer. The County Commissioners of Alachua County, the City Commissioners of Gainesville and some of the city and county officers appeared and testified as to the lack of adequate transportation facilities. Union County Commissioners and the officers of the Town of Lake Butler adopted resolutions which were presented to the Florida Railroad Commission. The County Commissioners of Columbia County and the officials of Lake City adopted resolutions requesting the service. The petitioner here admits the necessity of the service, but contends that the certificate should have been granted to it as it was then serving the territory and had been since 1935, and the assignors of its franchise had served the territory for a period of twelve years.

Pertinent language employed by the order No. 1452 of the Railroad Commission is viz:

"5. The applicant produced a number of witnesses from the various communities to be served by this operation, many of them the most prominent citizens of their respective communities, who testified that in their opinion public convenience and necessity required this service, and that such service would be of great benefit to the territory involved.

"Certified copies of Resolutions adopted · by the Boards of County Commissioners of several of the counties through which this operation would be conducted, and by the City Commissioners of the various cities to be served, were presented and filed in evidence. Resolutions were also presented by numerous Civic Clubs of the cities through which this line runs which were filed with the Commission and put in its correspondence file. Testimony was also produced to show the advantage of this line as a through route.

"The applicant filed its Exhibit No. 3, which showed the schedule for this through route. It proposes two round trips—one leaving Augusta at 6:30 A. M. arriving Williston 4:40 P. M. The other leaving Augusta 10:30 A. M. arriving Williston 8:40 P. M., and returning, one leaves Augusta 8:00 P. M., and the other leaving Williston 7:25 P. M., arriving Augusta 5:25 A. M. It also proposes certain local schedules between Gainesville and Williston and between Lake City and Gainesville, as follows:

| "Southbound read down | | | Northbound read up | |
| --- | --- | --- | --- | --- |
| "PM | PM | | AM | PM |
| "8:00 | 4:00 | Gainesville | 10:40 | 8:05 |

| 8:25 | | 4:25 | Archer | 10:15 | | 7:40 |
|------|------|------|--------|-------|------|------|
| 8:40 | | 4:40 | Williston | 10:00 | | 7:25 |
| PM | | PM | | AM | | PM |

| "PM | PM | AM | | PM | PM | PM |
|-----|-----|-----|------|-----|-----|-----|
| "6:10 | 2:10 | 8:00 | Lake City | 12:30 | 4:55 | 9:55 |
| 6:55 | 2:55 | 8:45 | Lake Butler | 11:45 | 4:10 | 9:10 |
| 8:00 | 4:00 | 9:55 | Gainesville | 10:40 | 3:00 | 8:05" |

The rules applicable to the granting of a Certificate of Convenience and Necessity by the Florida Railroad Commission are fixed by Section 4 of Chapter 14764, Acts of 1931, Laws of Florida, viz: (a) the effect that the granting of such certificate may have upon transportation facilities within the territory sought to be served; (b) congestion of traffic on the highways likely to be caused by the granting of the certificates; (c) the effect that the granting of the certificates will have on the safety of traffic moving on the highway under the operation in relationship to other private or public traffic permitted by law to move over the same road or in the territory; (d) the adverse affect, if any, the granting of the certificate will have upon transportation as a whole in the territory. See Sec. 4 *supra*.

In the petition for rehearing it is contended that the Florida Railroad Commission did not proceed according to the essential requirements of the law in granting to the Georgia-Florida Coaches, Inc., Certificate of Convenience and Necessity No. 1452 authorizing it to transport passengers from the Georgia-Florida line to Williston, Florida, because the Florida Motor Lines Corporation was then "serving the territory" under a certificate or certificates

previously granted to it by the Florida Railroad Commission under the several provisions of Chapter 14764, *supra,* and these rights under certificates are vouchsafed by the fundamental law. It was the conclusion of the Railroad Commission, after hearing more than forty witnesses and receiving much documentary evidence for several days offered by citizens representing four counties that the Florida Motor Lines Corporation "was not serving the territory." Two or three witnesses were by the petitioner produced and they admitted that the territory should be more adequately served and the friction here occurs over the question of whether or not the Georgia-Florida Coaches, Inc., or the Florida Motor Lines Corporation shall serve the territory.

There is no testimony in the record to support the contention of the Florida Motor Lines Corporation that it is now or in the past has served the territory from Lake City to the Georgia-Florida line over Road No. 82, a distance of 31 miles; likewise that territory from Lake Butler, Dukes, Worthington, La Crosse and Gainesville, a distance of 31 miles, on road Nos. 49 and 99. It is true that the Florida Motor Lines Corporation now seeks to serve this territory and stubbornly contests the right of the Commission to award a certificate to a competitor. It has been in the Gainesville territory since 1935 and with its franchise assignors for the past twelve years. The only gesture is a letter dated January 19, 1940, a check with a subsequent request that the letter to the Florida Railroad Commission be considered as an application but not to act upon it.

The record discloses and the Commission found that the students of the University of Florida residing

north of Lake Butler in Union County, and between Lake Butler and Raiford, and from Lake Butler to La Crosse were without transportation facilities. Teachers attending the University were not accomodated and farmers in these counties could not attend Tuesdays and Thursdays stock sale at Gainesville. The laborers employed by the farmers were similarly affected. The men employed by turpentine operators as tie choppers and laborers at saw mills in the territory had been denied transportation service. Representative Joe Jenkins testified that the service rendered the people by the petitioner between Gainesville, Alachua, High Springs and Lake City was so inadequate that he declined to use it and used his car in traveling. Other witnesses testified before the Commission as to the inadequacy and substandard service in the Gainesville territory rendered by the petitioner. The law makes it the duty of the Railroad Commission to correct such a condition as shown by this record.

The people residing in the territory 31 miles north of Lake City on road No. 82 have no transporation service. The area is thickly populated. Paralleling road No. 82 on the east is a large timber reservation consisting of many thousands of acres and a turpentine experiment station owned and operated by the United States Government and employment is given to a considerable number of professional and common laborers; herds of cattle, stock and hogs are raised on large plantations in the area and labor is employed. Many hundreds of these people are without newspaper service and facilities to obtain necessary medicines and treatment by physicians. Mr. Joyner testified, as shown by the record, that these employees lined

road No. 82 "like birds," thumbing and begging for rides. Medical privileges are not available to many of these people which could be supplied by the contemplated bus service. Forest fires occur on the Government reservation and the bus service would be advantageous to their control, as well as to the teachers in the rural area of this section. The service could be utilized in obtaining hospitalization and treatment at Lake City, and passengers on this line could, with stop-over privileges, visit the Okeefenokee Swamp and the Suwannee River.

Additional pertinent provisions of the challenged order are viz:

"7. The Commission has carefully considered the record in this case, and the needs of the various communities involved, and finds:

"(a) That the through service from Augusta, Georgia, through Lake City to Williston, Florida, if proper interchanges are made at Williston, Gainesville and Lake City, will be of great benefit not only to this particular territory but to the traveling public of the Tampa, St. Petersburg and Orlando territory who desire to make use of the service.

"(b) That there is at present no service directly between Lake Butler and Gainesville by which the communities of Worthington Springs and La Crosse can be served and public convenience and necessity require this service.

"(c) That the applicant and Florida Motor Lines Corporation and Tamiami Trail Tours, Inc., be directed to interchange passengers at Williston; and the applicant and Florida Motor Lines Corporation be directed to interchange passengers at Gainesville; and that the applicant and Florida Motor Lines Cor-

poration, Union Bus Company and Southeastern Greyhound Lines be required to interchange passengers at Lake City.

"Wherefore, it is Considered, Ordered and Adjudged by the Railroad Commission of the State of Florida that the application of Georgia-Florida Coaches, Inc., for a Certificate of Public Convenience and Necessity authorizing it to transport passengers, baggage, newspapers and light express between the Georgia-Florida State line and Williston via Lake City, Lake Butler, Gainesville and Archer over State Highways Nos. 82, 2, 1, 28, 49, 99, 13 and 5, be and the same is hereby Granted."

The record discloses that in many instances the local passenger traffic is not self sustaining financially, but when tied into a through route the entire chain will produce a profit. The through service authorized from Augusta, Georgia, via Lake City and Gainesville, into Williston will accommodate passengers from Tampa and St. Petersburg. The overflow of patients at Bay Pines, a Federal hospital located near St. Petersburg, can be cared for at Lake City; the enlisted men at McDill Field near Tampa can be accommodated; also through transportation from this area to the Federal Marine Hospital at Savannah, Georgia, and the mental hospital of the Federal Government located at Augusta, Georgia, will be provided. Time and costs of transportation between these Florida points and Augusta will be reduced, and Florida will acquire and possess an additional arterial highway. The service can or may assist in the progress of our national defense. Thousands of tourists will be accommodated.

What does the record disclose as to a duplication of service between Williston and Gainesville? We find two lines emerging from this point. One runs from Williston via Archer, Gainesville, Palatka and St. Augustine. Another route is Williston, Archer, Gainesville, La Crosse, Worthington, Dukes, Lake Butler, Lake City, Benton and thence to Augusta. The duplication of service from Lake Butler to Lake City is simply that two routes originate at Lake City, thence go to Lake Butler, Starke, Camp Blanding, Green Cove Springs, and thence to St. Augustine. The other route runs from Lake City to Lake Butler, thence to Dukes, La Crosse and Gainesville. It is similar to the arterial highway from Jacksonville to Baldwin, where traffic goes into West Florida, Central Florida and down the West Coast.

The Florida Railroad Commission heard testimony and decided these controversial questions of fact. The question arises as to what weight shall be accorded the orders of the Florida Railroad Commission on questions of fact by the Supreme Court of Florida. It has concluded that the petitioner has "never served this territory" and the facts appearing in the record support this view. Where there is substantial evidence to sustain an administrative regulation and no rule of law is violated, the courts in general will enforce it. See Florida Motor Lines v. State Railroad Commission, 101 Fla. 1018, 132 So. 851. The question of the weight of the evidence is for the Commission and not for the courts, even though this court may have reached a different conclusion on the same testimony. See Louisville & N. R. Co. v. Matthews, 104 Fla. 603, 140 So. 469; Florida v. United States, 292 U. S. 1, 54 Sup. Ct. 603, 78 L. Ed. 1077; Central

Truck Lines v. Railroad Commission, 118 Fla. 555; 160 So. 26; Tamiami Trail Tours v. Railroad Commission, 128 Fla. 25, 174 So. 451.

The original opinion and decision is reaffirmed on rehearing.

BROWN, C. J., WHITFIELD and THOMAS, JJ., concur.

TERRELL and ADAMS, JJ., dissent.

BROWN, C. J., concurring in opinion of Mr. Justice CHAPMAN:

It seems clear to me that this case is governed by the opinion and decision of this Court in the case of Tamiami Trail Tours, Inc., v. Fla. Railroad Commission, 128 Fla. 25, 174 So. 451.

BUFORD, J., dissenting:

After hearing on rehearing granted and reconsideration of the question, "as to whether petitioner was at the time of making the order by respondents, serving the territory between Lake City and Williston within the purview of the statute giving the serving Company priority," the present writer has reached the conclusion that we should indulge in a judicial repast of crow.

Section 3 of Chapter 14764, Acts of 1931, in the first paragraph thereof provides:

"Section 3. No auto transportation company shall operate any motor vehicle for the transportation of persons or property as a common carrier for compensation on any public highway in this State without first having obtained from the Railroad Commission a Certificate that Public Convenience and necessity requires such operation.

"Application for such Certificate of Public Convenience and necessity for common carriage made by any auto transportation company shall be in writing verified by the applicant and shall specify the following matters:

"1. The name and address of applicant and the names and addresses of its officers, if any.

"2. The public highway or highways over which and the fixed termini or the regular route, if any, between which or over which applicant desires to operate.

"3. The kind of transportation, whether passenger or freight, or both, in which applicant intends to engage, together with a brief description of each vehicle which applicant desires to use, including the seating capacity thereof, if buses, or the tonnage thereof, if trucks, and including specifically the size and weight of such vehicle.

"4. The proposed time schedule of operation.

"5. An agreement on the part of the applicant to conform with and abide by all tariffs and classifications as to freight or passenger carriage which may be prescribed by the Commission from time to time."

The record shows (a) Georgia-Florida Coaches is a new corporation merging operation now existing from Lake City to McRae, Georgia, and from McRae to Augusta, Georgia; (b) prior to the order herein the petitioner's operation extended into Florida only from the Georgia State Line to Lake City; (c) petitioner sought and procured an order extending its line in Florida from Lake City to Lake Butler, thence through Worthington Springs and La Crosse to Gainesville, thence via Archer to Williston, a total distance of 80 miles.

It is further shown that Florida Motor Lines at the time of the application served the *territory* by operating from Lake City via Lake Butler to Starke and from Jacksonville via Starke to Gainesville and with multiple lines served the route from Gainesville via High Springs to Lake City and from Williston via Archer and High Springs to Lake City.

The portion of the route or line granted to petitioner which is not served by existing carriers is the route or line from Lake Butler via Worthington Springs and La Crosse to Gainesville.

So it appears that Florida Motor Lines is a certificated carrier operating in the territory sought to be covered by petitioner, although it does not operate over the line or road between Gainesville and Lake Butler via Worthington Springs and La Crosse. This was and is the additional service, and facilities, which petitioner applied for and received permit to serve.

The record shows that at the hearing Florida Motor Lines tendered service by operating two of its through schedules each day from Lake City via Lake Butler, Worthington Springs and La Crosse to Gainesville.

The record further shows that on January 19, 1940, Gator Motor Lines, addressed a communication to the Secretary of the Railroad Commission, as follows:

"Mr. George L. Patton,
 Railroad Commission,
 Tallahassee, Florida.

"Dear Mr. Patton:

I have been requested to ask the permission of the Railroad Commission to extend my services from Palatka to Bunnell via San Mateo and Andalusia over Road 28, and from Gainesville to Lake Butler via

Dukes, Worthington and La Crosse over Roads 49 and 99. If such service is needed I would like to be first on the docket to provide such service since the routes are extensions to my present operation.

"I would like more time to investigate the demands for this service and therefore would appreciate your holding this application in your dormant file until I can be sure of its necessity before presenting same to the Honorable Commission.

"Thanking you for this consideration, I am

Yours very truly,
(Signed) Hazel C. Bell,
Gator Motor Lines, Inc."

to which, the Commission, through its Secretary, replied as follows:

"Mrs. Hazel C. Bell,
Gator Motor Lines, Inc.,
St. Augustine, Florida.

"Dear Mrs. Bell:

This will acknowledge receipt of your letter of January 19 in which you enclose check in the amount of $50.00 to cover the cost of public hearing in the matter of your application for an extension of your common carrier certificate to operate from Palatka to Bunnell via San Mateo and Andalusia and from Gainesville to Lake Butler via Dukes, Worthington and La Crosse.

"I am enclosing application forms which you may execute and filed.

Yours very truly,

_____

Secretary."

The record also shows that Florida Motor Lines has become the Lessee of Gator Motor Lines.

So it appears that Florida Motor Lines is serving the territory which the applicant proposes to serve and that Florida Motor Lines has definitely offered to adequately serve the line in the territory between Gainesville and Lake Butler via Worthington Springs and La Crosse.

Section 3 of Chapter 14764, supra, provides:

"When application is made by an auto transportation company for a certificate to operate as a common carrier in a territory or on a line already served by a certificate holder, the Commission shall grant same only when the existing certificate holder or holders serving such territory fail to provide service and facilities which may reasonably be required by the Commission."

We think it is not necessary for us here to reiterate what we have said in Florida Motor Lines v. Railroad Commission, 100 Fla. 538, 129 Sou. 876; S.A.L. Ry. Co. v. Wells, 100 Fla. 1027, 130 Sou. 587; S.A.L. Ry. v. Wells, 100 Fla. 1631, 131 So. 777; Central Truck Lines, Inc., v. Fla. State R.R. Commission, 146 Fla. 521, 1 Sou. (2nd) 470; Central Truck Lines v. Fla. R.R. Commission, 118 Fla. 555, 160 Sou. 26.

The operation under the order will require a duplication of service over the twenty-two miles of road between Lake Butler and Lake City and over fifteen miles of road between Gainesville and Archer and over eleven miles of road between Archer and Williston, making a duplication of service on forty-eight miles of the route (from Williston to Lake City) which via Worthington Springs and La Crosse is approximately eighty miles.

My conclusion is that the order violates that part of Section 3 of Chapter 14764 quoted, supra, and, therefore, should be quashed.

TERRELL and ADAMS, JJ., concur.