TAMPA TRANSIT LINES, INC., a Florida Corporation, and AIR FIELD BUS LINES, INC., a Florida Corporation, v. EUGENE S. MATTHEWS, as Chairman, W. B. DOUGLASS and JERRY W. CARTER, as members of and constituting the Railroad Commission of the State of Florida.

27 So. (2nd) 377 June Term, 1946
October 1, 1946 Division A

*Lewis H. Hill, Jr., Seth Dekle* and *W. B. Dickenson, Jr.,* for petitioners.

*Lewis Petteway,* for respondents.

*A. Pickens Cole* and *George A. Gibbs,* as amici curiae.

BUFORD, J.:

On petition for certiorari we are asked to review an order of the Railroad Commission of the State of Florida awarding a permit to Hillsborough Bus System, Inc., a Florida Corporation, to operate as a common carrier of passengers for hire over certain designated routes lying partly in the City of Tampa and partly beyond the City limits of Tampa but within Hillsborough County.

As we see the controversy, it is necessary for us to discuss only two of the contentions presented. The other contentions presented we resolve against the Relators without discussion herein.

The two questions which we apprehend require discussion are:

"Question 1. Under Sections 612.03 and 612.56, Florida Statutes 1941, is a corporation authorized to make application for and receive a certificate of public convenience and necessity prior to there having been paid in to the corporation the amount of capital specified in its certificate of incorporation?

"Question 2. Did the Florida Railroad Commission err in assuming jurisdiction over transportation companies operating within the adjacent suburban territory of a municipality?"

The findings of the Commission in regard to these questions were:

"(1) Applicant began operating from Tampa to Six Mile Creek March 1, 1942, under contract with Tamiami Trail Tours, Inc., approved by this Commission, which latter company holds authority from this Commission to operate over said route. During the same period applicant operated to Riverview and, at the time of the hearing, these two points were still being served by the applicant.

"(2) The proposed routes begin at applicant's terminal in the City of Tampa and extended for some distance beyond the City limits. It is the intention of applicant to serve those people living along the proposed routes outside the City of Tampa who have business in said city. No transportation will be provided for passengers to and from points within the City.

"(3) Protestants operate within the City of Tampa under city franchise, furnishing an urban service for the residents of said city. Through the years they have not provided transportation for persons living beyond the city limits over applicant's proposed routes, but did inaugurate some service over said routes on the day before the hearing in this cause. Protestants are not subject to the jurisdiction of this Commission, are not certificated carriers authorized to operate in the territory in question, and cannot be required by this Commission nor the City of Tampa to provide the service proposed by applicant, although there is a public need for transportation over the proposed routes.

"(4) While a small portion of each route necessarily traverses suburban territory immediately adjacent to the City of Tampa, the greater portion of each route lies beyond such territory. That portion beyond the thickly populated suburban territory immediately adjacent to the city is not sufficiently populated to make an operation of this kind pay unless such operation can furnish service to those people living just outside the city limits. At the same time, there is a definite need for the service all along each proposed route.

"(5) The statutes exempt from the jurisdiction of this Commission persons operating motor vehicles within the corporate limits of any city or town or the adjoining suburban territory where such business of carriage is regulated by the legislative body of such city or town. Where the entire operation witin the city is with closed doors and the business of carriage relates only to passengers originating in, or destined to, points beyond the City limits, it is the view of the Commission that it has jurisdiction over such operations rather than the city.

"(6) E. F. Scott, President of applicant corporation, is presently operating over portions of the proposed routes as an individual. He has caused the applicant corporation to be formed for the purpose of carrying on the proposed operations if a certificate is granted; and has testified that he has transferred to the corporation one thousand dollars in cash and will transfer all equipment now being operated as soon as the application is granted. Future operations would be by Scott's Corporation, rather than by him individually. He proposes the transfer of sufficient assets to render the applicant financially fit and able to carry on the proposed operations so that there would appear to be no reason to believe that the service would be interrupted or terminated because of financial difficulties."

The record supports these findings.

If the Railroad Commission has no jurisdiction of transportation facilities operated as public carriers over that portion of the respective routes lying outside the municipality, then they are entirely not regulated by any authority. Certainly it was never the legislative intent that such a condition should exist. The applicant submitted itself to the jurisdiction of the Commission and we hold that there was ample ground shown to warrant the Commission in assuming to exercise jurisdiction.

We entertain some doubt that the Relators may challenge the eligibility of the applicant to present the application on the ground that it had not become fully authorized to do business as a corporation in the State of Florida, but, aside

from this, we think the finding of the Commission as reflected by paragraph (6), supra, was and is correct.

It is the contention of the Relator that the applicant is precluded from making the application because Sec. 612.03 Florida Statutes, 1941 (same F.S.A.) requires that there be stated in the certificate "the amount of capital with which the corporation will begin business which shall not be less than $500.00" and because Sec. 612.56 provides, "No corporation shall commence business until the amount of capital specified in the certificate of incorporation as the amount of capital with which it will commence business has been paid in." We do not think that the provisions of these two sections apply to the applicant. In this case the applicant was not doing business. It was applying for a permit to do business and it made a satisfactory showing to the Railroad Commission that it would be financially able to conduct the business if and when it got the permit to do so.

There is no showing that the corporation has not made full and definite arrangements for the acquisition of sufficient assets to comply with the law before beginning to operate under its permit.

We, finding that the Railroad Commission, in entering the orders herein complained of, has not departed from the essential requirements of the law, deny and dismiss the petition for certiorari.

It is so ordered.

CHAPMAN, C. J., TERRELL and ADAMS, JJ., concur.