PENSACOLA TRANSIT, INC., a Florida corporation, and the CITY OF PENSACOLA, v. W. B. DOUGLASS, as Chairman, JERRY W. CARTER and WILBUR C. KING, as members of and constituting THE RAILROAD COMMISSION OF THE STATE OF FLORIDA, now known as FLORIDA RAILROAD AND PUBLIC UTILITIES COMMISSION; TESHE GREYHOUND LINES, a corporation, MODERN COACH CORPORATION, a corporation, and CAPITAL MOTOR LINES, a corporation, v. W. B. DOUGLASS, as Chairman, JERRY W. CARTER and WILBUR C. KING, as members of and constituting the Railroad Commission of the State of Florida.

34 So. (2nd) 555            January Term, 1948
February 24, 1948            Division A

*Yonge, Beggs & Lane* for Pensacola Transit, Inc., and *F. Churchill Mellen,* for City of Pensacola, petitioners.

*Fisher, Fisher, Hepner & Fitzpatrick,* for Teche Greyhound Lines, a corporation, Modern Coach Corporation, a corporation, and Capital Motor Lines, a corporation, petitioners.

*Lewis W. Petteway, R. Clyde Simmons* and *J. Kenneth Ballinger,* for respondents.

*Jones, Latham & McLane, T. Franklin West* and *Philip D. Beall, Jr.,* as Amicus Curiae.

CHAPMAN, J.:

The petitioners, Pensacola Transit, Inc., City of Pensacola, Teche Greyhound Lines, Modern Coach Corporation and Capi-

tal Motor Lines, seek an order of this Court quashing and holding as naught an order of the Railroad Commission of the State of Florida dated May 28, 1947, entered pursuant to notice and after a hearing in which considerable testimony was taken, and further identified as Order No. 2019. The effect of this order was to grant to Frank Petelinski and Red Ball Motor Lines a certificate of public convenience and necessity as a common carrier of passengers and light express, newspapers, mail and baggage in motor vehicles over certain specified routes in the vicinity of Pensacola, Florida.

It is contended that the order providing for the issuance by the Florida Railroad Commission of a certificate of public convenience and necessity authorizing the transportation of passengers and property in motor buses on designated schedules over specified routes is not only contrary to law but cannot be supported by the substantial testimony appearing in the transcript certified to this Court. The routes are viz.

"1. From Pensacola, Florida, to the Florida-Alabama State Line over U. S. Highway No. 29 and Florida State Highway No. 95, via Gonzalez, Florida Pulp and Paper Company, Cantonment, Cottage Hill, Quintette, Molino, Pine Barren, Bogee, McDavid, Bluff Springs, Century and South Flomaton, and return over the same route, with the right to serve all intermediate points.

"2. From Pensacola, Florida, To Pensacola Beach Casino and Gulf of Mexico, over Florida State Highway No. 30 and U.S. Highway No. 98 and that certain un-numbered highway, and return over the same route with the right to serve all intermediate points.

"3. From Pensacola, Florida, to Riverview, Florida, over U. S. Highway No. 90, via East Pensacola Heights and Gull Point, and return over the same route with the right to serve all intermediate points, for sightseeing and charter parties, solely.

"4. From Pensacola, Florida, to Saufley Field in Escambia County, Florida, over U. S. Highway No. 90 to the intersection of U. S. Highway No. 90 and the Saufley Field Road, thence over the Saufley Field Road to Saufley Field and re-

turn over the Saufley Field to the intersection of the Belleview Road, thence over the Belleview Road to its intersection with U. S. Highway No. 90; thence over U. S. Highway No. 90 back to Pensacola, Florida, via Brownsville and West Pensacola.

"5. From Pensacola, Florida, to Riverview, Florida, and Escambia County River, in Escambia County, Florida, over State Highway No. 291, via Brent, Ferry Pass, Clark's Store and Ellyson Field and return over same route, with the right to serve all intermediate points.

"6. From the intersection of highway U. S. 90 alternate and State Highway No. 291, to the intersection of U. S. Highway No. 90 Alternate and State Highway No. 95, which highway is also known as U. S. Highway No. 29, and return over the same route, with the right to serve all intermediate points. There is no bus service over this route.

"7. From Clark's Store at the intersection of State Highways No. 291 and 290 over State Highway No. 290, to the intersection of State Highway No. 290 and State Highway No. 95 which highway is also designated as U. S. Highway No. 29, and return over the same route, with the right to serve all intermediate points.

"8. From the intersection of Brent Lane with State Highway No. 291 to the intersection of Brent Lane with U. S. Highway No. 29 and State Highway No. 95, and return over the same route, with the right to serve all intermediate points.

"9. From Pensacola, Florida, to Corry Field in Escambia County, Florida, over State Highway No. 294 and return over the same route with the right to serve all intermediate points.

"10. From Pensacola, Florida, to Gulf Beach in Escambia County, Florida, over County Highway known as Gulf Beach Highway, and also over State Highway No. 295, via Warrington, Pensacola, Naval Air Station, Pleasant Grove and Interarity Point, and return over the same route, with right to serve all intermediate points.

"11. From Pensacola, Florida, to the Perdido Bay and Paradise Beach over U. S. Highway No. 90 and State Highway No. 298, via Myrtle Grove and Mill View; and also to the Dog Track of the Pensacola Kennel Club over State Highway No.

297 and return over the same route, with the right to serve all intermediate points.

"12. From the intersection of State Highway No. 298 and State Highway No. 297 to Pensacola Naval Air Training Base over State Highway No. 297; County Highway known as the Gulf Beach Highway; and over State Highway No. 295, via Pensacola Kennel Club Dog Track and Pleasant Grove, and return over the same route with the right to serve all intermediate points.

"13. From Pensacola, Florida, to Warrington, Florida, over County Highway known as the Warrington Highway, via Bayou Chico and return over the same route, with the right to serve all intermediate points.

"14. From West Pensacola, in Escambia County, Florida, over State Highway No. 295, to the Pensacola Naval Air Training Base, thence continuing over State Highway No. 295 to the intersection of State Highway No. 295 with Gulf Beach Highway.

"15. From Pensacola, Florida, to Gulf Beach over the Admiral Murray Boulevard, State Highway No. 295 and Gulf Beach Highway, via Warrington, Pleasant Grove, Interarity Point and colored Beach beyond Pleasant Grove, and return over the same route with the right to serve all intermediate points."

The Pensacola Transit, Inc., and the City of Pensacola contend, first, that the issuance of a certificate of public convenience and necessity, under the testimony adduced and the applicable law, was clearly erroneous as to the territory situated wholly within the city limits of Pensacola and its adjoining suburban territory and these routes are identified in the challenged orders as (b), (d), (e), (g), (h), (i), (l), (m) and (n). Second, that the challenged order should be amended to require the Red Ball Motor Line to operate with closed doors inside the City of Pensacola and its adjoining suburban territory and to restrict the transportation of passengers to or from points outside of the suburban territory or from fixed terminals within the City of Pensacola and adjoining suburban territory. This contention applies to routes

identified in the order as routes (a), (c), (j) (k) and (o).

The petition of the Teche Greyhound Lines, the Modern Coach Corporation and Capital Motor Lines present the contention that the Railroad Commission in its order failed to take into consideration Section (3) of Section 323.03, which is viz:

"(3) Disposition of Application.—At the time specified in said notice, or at such time as may be fixed by the commission, a public hearing upon said application shall be held by the commission. At or after such hearing the commission may issue a certificate of public convenience and necessity, as prayed for or refuse to issue the same, or may issue the same with modifications, or upon such terms and conditions as in its judgment the public convenience and necessity require; provided, that the commission in granting any such certificate shall take into consideration the effect that the granting of such certificate may have upon transportation facilities within the territory sought to be served by said applicant, and also the effect upon transportation as a whole within said territory. . . .

"When application is made by an auto transportation company for a certificate to operate as a common carrier in a territory or on a line already served by a certificate holder, the commission shall grant same only when the existing certificate holder or holders serving such territory fail to provide service and facilities which may reasonably be required by the commission."

It is not clear to the writer, after a careful study of the transcript and briefs, the exact portions of the order that is sought to be quashed here, but apparently the contentions are directed to routes (a), (c), (j), (k) and (o) of the challenged order. It is reasonable to assume that the petitioners named in Case No. 2, supra, object to and now protest the issuance by the Railroad Commissioners of Florida of certificates of convenience and necessity to the applicant to operate as a common carrier over each of the routes leading out of the City of Pensacola and adjoining suburban territory over which routes the petitioners now operate as certificated carriers.

The transcript discloses a resolution of the Board of County Commissioners of Escambia County adopted under date of March 25, 1947, which recites (1) that the Commissioners are familiar with and have knowledge of the proposed routes in Escambia County over which the applicant intends to operate as a common carrier; (2) the several Commissioners express the unanimous view that the proposed service offered by the applicant is needed by the residents and visitors of Escambia; (3) the Board of Commissioners of Escambia County requested the Railroad Commissioners of Florida to grant to the applicant authority to operate as a common carrier of passengers and property over the several routes designated in the petition.

The Railroad Commission, from the evidence adduced before it by the respective parties, pursuant to notice and hearing, made certain findings of fact and incorporated the same in the order sought to be quashed here by petition for certiorari, and the same, in part, are viz:

"1. Pensacola Transit, Inc., is not a certified carrier operating under the jurisdiction of this Commission, but operates exclusively under a franchise granted to it by the City of Pensacola. Said transit company has extended some of its routes beyond the city limits of Pensacola and is serving some of the surburban territory immediately adjacent to said city. However, such operations beyond the city limits of Pensacola have not been authorized by this Commission and it does not appear that the city of Pensacola has been granted extra territorial jurisdiction by the Legislature.

"2. Florida Pulp and Paper Company has a paper mill in the immediate vicinity of Cantonment on U. S. Highway 298 between Pensacola and Century. There are employed at this paper mill approximately 825 laborers, also approximately 125 officer personnel. 57 houses are provided in the immediate vicinity for white employees and 25 houses for colored employees. These employees are housed in a subdivision owned by the paper mill known as Harvester Village which is presently being enlarged. The population of this village is approximately 287, not counting those living in privately owned houses. Approximately 2000 people live within a

radius of two miles of the paper mill. Because of the inadequate common carrier bus transportation service between the paper mill and Century and between the paper mill and Pensacola, Florida Pulp and Paper Company has been forced to operate 5 buses to take care of their own employees. Representatives of the paper company testified that these five buses were not adequate but that they would be discontinued in the event the present application was granted. This company appears to have requested additional transportation service from existing common carriers and they requested Pensacola Transit Company on numerous occasions to take over the transportation service between Pensacola and Cantonment and the Pensacola Transit Co. refused to do it. A considerable number of employees of the paper mill live in and around Pensacola and between Pensacola and the mill. Many others live in and around Century and Flomaton and between there and the mill. In transporting its own employees, the paper mill company has transported approximately 200 persons per day one way and has operated its own transportation system for the past six years. The company has three regular shifts each day, at 7 A. M., 3 P. M. and 11 P. M. In addition, it has day workers that come to work at 7 A. M. and leave at 3:30 P. M., making an additional shift at 3:30 P. M. At these particular times there is a considerable demand for transportation to and from the paper mill. The paper mill company operates three buses between Pensacola and Cantonment and two between Century and Cantonment.

"3. The Alabama Pulp and Paper Company also maintains a paper mill at Cantonment and its transportation needs are approximately the same as those of Florida Pulp and Paper Company in its movements of employees to and from the mill.

"4. The gulf beaches are located some eighteen miles west of Pensacola and a little south of the Gulf of Mexico. At present there is no regular and dependable common carrier motor transportation service for passengers between Pensacola and the gulf beaches. Pensacola Transit Co. operates five and one half miles out in this direction to Navy Point, but on the remainder of the eighteen miles there is no service.

Many people live between Pensacola and the beaches and there are approximately 800 houses in the immediate vicinity of Navy Point and there is considerable demand for public transportation between Pensacola and the gulf beaches over this part of the proposed route. The gulf beaches are the principal beaches and recreation center for the city of Pensacola. Pensacola Transit Co. presently serves Pensacola Beach but holds no certificate for that operation from this Commission.

"5. A Dog Track is located west of the city of Pensacola and there is considerable demand for public transportation between Pensacola and said dog track.

"6. Saufley Field is located northwest of Pensacola, west of U. S. Highway No. 90 and there is considerable demand for public transportation between said field and Pensacola.

"7. There are a considerable number of people living on nine-mile road north of Pensacola and on Davis Street Highway and Palafox Highway running north from Pensacola, who require public transportation to and from Pensacola.

"8. The charter service rights applied for by applicant contemplate the following:

"a. The transportation of school children and adults by charter party on picnics between Pensacola and the particular resort or locality within the State of Florida where said picnic may be held.

"b. The transportation of sightseeing trips to historical points and beach resorts and other points in the State of Florida from Pensacola on irregular ad seasonal schedules.

"c. The transportation by charter party of athletic teams and athletic organizations from Pensacola to points and places in the State of Florida where such teams or organizations are to play a scheduled game.

"d. The transportation by charter party of groups of people to and from funerals between Pensacola, Florida, and other points and places in the State of Florida.

"e. Transportation of school children by charter party to and from school and recreational activities.

"f. The transportation by charter party of workers and employees to and from their homes and places of employment.

"From the evidence it appears that there is a public demand for the aforesaid types of charter service.

9. The applicant is fit and able financially and otherwise to render the transportation service contemplated in and by said application.

"10. There is a considerable demand for public transportation in motor buses over and along the proposed routes and public .convenience and necessity require that the application be granted as to the fixed routes hereinbefore set out.

11. There is also considerable demand for charter service such as that described hereon and public convenience and necessity require that the application for authority to transport charter parties as outlined in the application, be granted."

It is established law that in certiorari proceedings to review an order of the Florida Railroad Commission the petitioner has the burden of showing that the order complained of was illegal or unauthorized and failed to accord with the essential requirements of the law controlling the particular matter being reviewed. Great Southern Trucking Co. v. Douglas, 147 Fla. 552, 3 So. (2nd) 526; Miami Bridge Co. v. Railroad Commission, 155 Fla. 366, 20 So. (2nd) 356.

The Supreme Court of Florida will not disturb the findings of fact on the part of the Railroad Commissioners when based on conflicting testimony. It will, on the presentation of a justifiable question, determine the legal effect of the evidence, whether the order as made deprives the respondent of a constitutional or statutory right or for any reason which is contrary to law. State ex rel. Burr v. Seaboard Air Line Ry. Co., 93 Fla. 104, 111 So. 391. If there is substantial, competent evidence that is legally sufficient to support the findings and conclusions of the Railroad Commission, and no rule of law was violated in the proceedings and the whole record does not disclose an abuse of authority or arbitrary action, the findings and conclusions of the Railroad Commission will not be set aside on certiorari, although the reviewing Court might have

reached different conclusions on the evidence. Florida Motor Lines, Inc. v. Railroad Commission, 101 Fla. 1018, 132 So. 851; Florida Motor Lines Corp. v. Douglas, 150 Fla. 1, 7 So. (2nd) 843.

The Pensacola Transit, Inc., is not a certificated carrier but has operated as such under a franchise issued to it by the City of Pensacola for the past several years. The length of the routes now served by it situated in the vicinity of Pensacola are viz:

"East Pensacola Heights, a total one way distance of 3.85 miles, of which 2.45 miles lie wholly within the City.

"The Ellyson Field Route, a total one-way link of eleven miles, of which 1.9 miles lie wholly within the City.

"The Ensley Route, along U. S. Highway 29, a total one-way length of 9.6 miles, of which 1.9 miles lie wholly within the City.

"The Saufley Field Route, a total length of ten miles, of which 2.4 miles lie wholly within the City and 5/10ths mile lies wholly in the Government reservation.

"The Myrtle Grove Route, a total one-way length of 7.7 miles, of which 2.65 miles lie wholly within the City.

"The Corry Field Route, total one-way length 5.8 miles, of which 2.9 miles lie wholly within the City and 7/10ths of a mile lies wholly in the Government reservation. The Navy Point Route, the total length of seven miles, of which 2.9 miles lie wholly within the City.

"The Naval Air Station and Fort Barrancas Route, total length one-way—in all cases, on these routes of 9.5 miles of which 2.8 miles lie wholly within the City and 3.1 miles wholly on the Government reservation.

"The dog track Route being a particularly seasonal route, during the racing season of twelve miles, of which 2.8 miles lie wholly within the City.

"The Pensacola Beach service, which passes the Gulf Breeze Post Office, of a total length of nine miles of which 3.2 miles lie wholly inside the City.

"The argument is presented to the effect that the City of Pensacola, at the present time and for many years past, has regulated the transportation of passengers within its limits and adjoining suburban territory by granting franchise privileges to the Pensacola Transit, Inc. That the Florida Railroad Commission is without jurisdiction over the routes above set out within the incorporate limits of the City of Pensacola and adjoining suburban territory. The following provision of Section 323.29, F.S.A., is relied upon: "There shall be further exempted from the provisions of this Chapter and from Commission jurisdiction and control person or persons operating motor vehicles within the corporate limits of any city or town or the adjoining suburban territory."

The answer to this contention is that the Railroad Commission found as a matter of fact that the Pensacola Transit, Inc., and the City of Pensacola failed to provide transportation for persons living beyond the city limits and adjoining suburban territory along the proposed routes of the applicant. It is clear that the Pensacola Transit, Inc., is unregulated over the portions of the routes supra and as a result the people residing in the designated areas are denied transportation facilities, which was never intended by the Legislature. If we hold that the Railroad Commission is without jurisdiction to regulate these routes, then the serving carrier may at will select and serve the profitable routes and decline transportation services to those along non profitable routes. Tampa Transit Lines v. Matthews, 157 Fla. 875, 27 So. (2nd) 377.

The contention is made that the Railroad Commission failed and omitted to proceed according to the essential requirements of the law in the entry of the order dated May 28, 1947, as being in derogation of and in conflict with Senate Bill No. 989 which became effective as a law several days after the date of entry of the challenged order. On this assignment we decline to rule or express an opinion, as the contention was not ruled upon by the Commission below. The rights of the parties under Senate Bill No. 989 are not adjudicated, considered or passed upon by this court in this proceeding.

The petitions for certiorari are each denied.

THOMAS, C. J., TERRELL and SEBRING, JJ., concur.