54 So.2d 153 (1951)
GREAT SOUTHERN TRUCKING CO.
v.
MACK et al.
Supreme Court of Florida, Division B.
September 7, 1951.
Wayne K. Ramsay and Milam, McIlvaine, Carroll & Wattles, all of Jacksonville, for petitioner.
*154 Lewis W. Petteway, Guyte P. McCord, Jr., and D. Fred McMullen, all of Tallahassee, for Florida R. and Public Utilities Commission respondents.
Caldwell, Parker, Foster & Wigginton and Leo L. Foster, all of Tallahassee, for M.R. & R. Trucking Co., respondents.
CHAPMAN, Justice.
The Great Southern Trucking Company, during the year 1945, obtained from the Florida Railroad Commission a certificate of public convenience and necessity which authorized it to engage in the business of common carrier of freight by motor vehicles from Jacksonville, Florida, via U.S. Highway No. 90, serving the communities of Greenville, Monticello, Tallahassee, Havana, Quincy, Chattahoochee, Sneads, Cypress and Marianna. It appears that the Great Southern operated in other territory. Its motor equipment and facilities, etc., necessary to dispatch all the business in the territory are not here challenged, neither is its financial ability to acquire additional motor equipment and other facilities, if the business in the area should require. It now maintains daily three schedules out of Jacksonville: one truck leaves Jacksonville at 10:00 P.M.; another at 10:30 P.M., and the third at midnight, each destined for Tallahassee where it operates a 24-hour terminal facility and employing approximately 29 employees serving in three shifts. The schedules of return to Jacksonville from Tallahassee are set out in the record, with the exact time of arrival and departure from Tallahassee to Greenville.
Likewise regular daily schedules of freight service are maintained by the Great Southern from its terminal in Tallahassee to Quincy and Marianna and all intermediate points. Additional thereto a pickup and delivery service, consisting of several small trucks, is used in Tallahassee and at Quincy for the delivery of freight and the gathering thereof for shipment to the several points along the route, at the request or demand of the general public or any of its customers.
Prior to July, 1950, the M.R. & R. Trucking Company was the holder of a certificate of public convenience and necessity which authorized it to operate as a common carrier of freight and at several points in west Florida situated west of Tallahassee. In April, 1948, the Florida Railroad Commission extended its Certificate No. 11 authorizing it to transport freight in motor vehicles between Jacksonville and Pensacola over Highway No. 90, but this extension privilege required its operation to closed doors at Marianna and all points east on Highway No. 90 except Jacksonville, where it now maintains terminals, warehouses and offices. Similar facilities are maintained by it at Tallahassee, Panama City, Pensacola and Crestview.
In July, 1950, M.R. & R. Trucking Company filed with Florida Railroad Commission an application requesting a further extension of Certificate No. 11 of convenience and necessity authorizing it to transport freight by motor vehicles between: (a) Greenville and Marianna, Florida, over U.S. Highway No. 90, serving all points and places thereon, including Greenville and Marianna, with Aucilla and Greensboro as off-route points; (b) Tallahassee and Quincy, Florida, over State Roads 63, 12 and 10 and serving all points and places thereon, including Tallahassee and Quincy.
The Great Southern lodged with the Florida Railroad Commission a protest to the extension of Certificate No. 11 then held by the M.R. & R. Trucking Company from Marianna east to Greenville on Highway No. 90 on the theory that it was at the time and had continuously since 1945 rendered an adequate freight delivery service to the territory. The service so rendered by it was such a service as was reasonably required by the general public and the Railroad Commission. It was the contention of the M.R. & R. Trucking Company that the service being rendered by the Great Southern was not only inadequate but the freight transportation service for the affected area or territory had completely failed so as to bring its activities within the purview of Section 323.03(3), F.S.A. Evidence was adduced before the Commission on the issues made *155 and thereafter Order No. 2705 was entered by the Commission granting the extension of Certificate No. 11 to the M.R. & R. Trucking Company. This order is here for review on petition for writ of certiorari.
Section 323.03(3) provides: "At or after such hearing the commission may issue a certificate of public convenience and necessity, as prayed for or refuse to issue the same, or may issue the same with modifications, or upon such terms and conditions as in its judgment the public convenience and necessity may require; provided, that the commission in granting any such certificate shall take into consideration the effect that the granting of such certificate may have upon transportation facilities within the territory sought to be served by said applicant, and also the effect upon transportation as a whole within said territory.

* * * * * *
"When application is made by an auto transportation company for a certificate to operate as a common carrier in a territory or on a line already served by a certificate holder, the commission shall grant same only when the existing certificate holder or holders serving such territory fail to provide service and facilities which may reasonably be required by the commission."
It appears by the record that the Great Southern held a certificate of public convenience and necessity issued to it by the Florida Railroad Commission in 1945 under which it had served continuously the several communities between Greenville and Marianna. It was rendering the service in 1950 when the M.R. & R. Trucking Co. applied to the Florida Railroad Commission for a certificate to serve the same communities on the theory that the services then being rendered to these communities by the Great Southern were totally inadequate. On several occasions we have held that it is not the policy of the law to encourage destructive competition and thereby adversely affect existing service, but the law seeks to avoid a duplication of investments and other operating expenses or congestion of traffic on the highways. If a new carrier seeks to enter the field, it is generally held that it must show that the existing services are not adequate to serve the public need. Central Trucking Lines, Inc., v. Railroad Commission, 118 Fla. 555, 160 So. 26, 30.
Section 323.03(3), supra, requires the commission, prior to granting a certificate as applied for, to hear all evidence and thereafter take into consideration the effect that the granting of its approval of a duplicated service would have upon the transportation facilities then serving the territory, and also the transportation as a whole within the affected territory. The burden of proof which the law imposes was on the applicant to show that the public convenience and necessity demanded or warranted the granting of the proposed service.
In the case of the Central Trucking Lines, supra, we said: "Where an inquiry is required to be had on the question of public convenience and necessity with respect to either the institution of an entirely new service, or the material extension, modification, or alteration of an existing service in such manner as to amount to the same thing, it must be affirmatively established by appropriate evidence, and duly found by the commission therefrom, that the particular new service proposed to be brought into existence or made effective is required in the interest of public convenience and necessity. Absent such affirmative finding bottomed on a sufficient factual showing to substantially support it, the Railroad Commission is without authority to grant its approval for the inauguration of a substantially new service, regardless of the form in which it is applied for, and orders so made by the commission under such circumstances are in violation of the essential requirements of law and should be quashed when relief therefrom is sought by affected parties in a proceeding by certiorari. Florida Motor Lines v. Railroad Commission, 101 Fla. 1018, 132 So. 851, supra." See Central Truck Lines Inc. v. Railroad Commission, 146 Fla. 521, 1 So.2d 470; Florida Motor Lines Corporation v. Douglass, 150 Fla. 1, 7 So.2d 843; Pensacola Transit, Inc., v. Douglass, 160 Fla. 192, 34 So.2d 555.
*156 Duplication of service on the part of transportation companies is always cautiously authorized by utility commissions. Such applications are approved only where the public convenience and necessity require it. Pond on Public Utility [4 Ed.], Volume 3, p. 1440, summarized statutes of other states similar to ours and states the general rule, viz.: "An order of the railroad commission, granting its certificate authorizing motor vehicles to render service as common carriers in addition to the present service, will be set aside where public convenience and necessity do not really require it; and even where additional service may be required, the present service should be extended or enlarged rather than permit another company to enter the field, because a unified, coordinated and continuous service is in the interest of public convenience and necessity, which can generally be best served by one, rather than by a number of companies, under the proper regulation and control of the commission. Statutes in this connection generally contemplate and frequently expressly require that additional new service from a different source shall not be permitted to supersede or vitally impair the present transportation service, where that is or may become adequate to the public needs. Existing investments should be conserved, and present service protected, where adequate and satisfactory, in the interest of justice and the public welfare; and while the question of the necessity for new or additional service is one of fact, its construction and application in each case should be reasonable and practicable in view of all the present and near future conditions and demands for public service." See 37 Am.Jur., p. 530, paragraph 12: 60 C.J.S., Motor Vehicles, § 52, page 227.
The record discloses that the Railroad Commission heard many witnesses who gave testimony in the cause before it either for or against the issuance of a certificate of convenience and necessity to the M.R. and R. Trucking Company. Many of these witnesses resided and operated their businesses in the affected territory. We find the testimony of many witnesses going to the point that the Great Southern Trucking Company in the past five years had rendered the public poor, inadequate and unsatisfactory freight service. It is true that the burden of proof under law was on the applicant to establish that the service rendered the public in the area by the Great Southern Trucking Company had failed and was inadequate to the public needs or requirements.
The order of the Commission recites "that the protestant [Great Southern Trucking Company] has not furnished the public in this area with a service adequate to their needs." "The public convenience and necessity is of paramount importance to the private interest of a particular transportation company." We find in the record substantial, competent testimony to sustain the conclusion reached by the Railroad Commission and expressed in its order challenged in these proceedings. Where there is competent, substantial evidence in the record to support the findings of the Commission this Court will not substitute its conclusions for the findings of the Railroad Commission. Atlantic Coast Line R.R. Co. v. Railroad Commission, 149 Fla. 245, 5 So.2d 708.
Counsel for petitioner has supplied us with able briefs in which the controlling authorities are cited and argument made going to the point that the respondent in entering its order here challenged departed from the essential requirements of the law.
The testimony adduced by the parties was carefully analyzed and it is contended that the respondent misinterpreted the legal effect of the testimony when considered in its entirety. We find considerable merit to a portion of the comments of counsel as expressed in their briefs and in able oral argument heard at the bar of this Court but our answer thereto is that the applicable law simply does not permit or allow this Court to substitute its conclusions on factual matters for the findings of the Railroad Commission.
The petition for certiorari is denied.
SEBRING, C.J., and ADAMS and ROBERTS, JJ., concur.