MATHEWS, Justice.
This is a petition for writ of certiorari to review an order of the Florida Railroad and Public Utilities Commission denying the application of the petitioner for a certificate of public convenience and necessity to operate an auto transportation company to and from the Tampa International Airport in Hillsborough County along a route from the north center line of Main Street in Largo, embracing the territory of Largo, Belle-air, Clearwater, Dunedin, Safety Harbor, Oldsmar, Tarpon Springs, and the non-municipal territory lying and being between the named municipalities. After the appointment of an examiner and the taking of testimony and after the examiner made his report and recommendations to respondents, a public hearing was held. Thereafter the respondents made an order which, among other things, contained the following:
“Applicant seeks authority to conduct a seven-passenger limousine service for the transportation of passengers to and from certain points in North Pinellas County and Tampa International Airport, formerly known as Drew Field, and proposed to meet all flights coming to said airport.
* * * * * *
“Under the exemptions contained in Section 323.29, Florida Statutes, operations conducted between cities and towns whose boundaries adjoin are exempt from the jurisdiction of this Commission. It appears that the corporate limits of Clearwater and Tampa are contiguous, and that their boundaries adjoin at or near the center of Tampa Bay. It follows, therefore, that the proposed operation by applicant be *790 tween Clearwater and Tampa International Airport is exempt from the jurisdiction of this Commission. Clear-water is also the largest town in the area which applicant proposes to service, and it does not appear that there is sufficient public demand in the other towns in North Pinellas County to support the service which applicant proposes to furnish.
“After due consideration of the testimony submitted in this application, it appears that applicant has failed to show public convenience and necessity which would justify the granting of this application and has failed to show that applicant would receive sufficient patronage to make his operation a profitable business venture.”
It appears from said order that it was based upon mixed questions of law and evidence. The respondents first determined that the proposed operation of the petitioner was exempt from the jurisdiction of the Commission because the boundaries between Clearwater and the City of Tampa joined for a short distance and that there was not sufficient business from the other territory going to or from Tampa to justify the operation or to show that public convenience and necessity for such operation existed. It appears that in evaluating the testimony the respondents considered the application as a means of transportation to and from Tampa by the local citizens of the communities affected. This was not simply an application for a certificate to render service to and from Tampa of persons living in the communities affected, but it was an application for a certificate to render a service to and from an airport. No doubt the determination of the Commission that public convenience and necessity had not been made to appear was based upon its conclusion that it had no jurisdiction in the first place and it made no distinction between transportation to serve the convenience and necessity of local people and that of people who desired to use airplanes as a means or method of transportation.
With reference to air travel, one of the most difficult problems confronting those who wish to use air transportation is ground transportation. The airlines’ primary duty is performed when they deliver passengers from airport to airport, but the problem of those using air transportation is not solved unless the ground transportation is sufficient and adequate to get them to and from airports. It is a matter of common knowledge that those who use air transportation do so because it is a speedy and convenient method of transportation. They wish to get from place to place by a speedy method.
In a case of this kind it is rather difficult to get the direct testimony of those using the air service. After having made the trip they could not wait in Clearwater or Tampa for the convenience of an examiner to take their testimony as to the loss of time by reason of inadequate or inefficient ground transportation. Passengers on airlines come and go to and from the four corners of the country and it is too much to expect them to remain in Tampa or Clearwater to give their testimony with reference to inconveniences of the ground transportation. In the absence of such testimony statistics and records of those whose business it is to keep such statistics and records should be available.
One witness by the name of Keppie testified that he conducted a travel agency in the City of Clearwater and that there was no limousine service from the area to the Tampa airport. He had conducted this travel agency since 1923 and was a ticket agent for three airlines operating into the Tampa airport, to-wit, National Airlines, Eastern Airlines and Trans-Canada Airlines. His average ticket sales for passenger plane tickets from the area involved in the application for use of airplanes at the Tampa International Airport was approximately 600 per month.
Another witness, who lived in Safety 'Harbor, testified that he was engaged in real estate, hotel, and owner and operator of apartment houses and has served -as Mayor for 16 years. He was acquainted with the needs of his community as it related to airplane passenger traffic. A great number of people from New York, Chicago and other *791 points came to his territory through the airport because of health springs and sanitariums. There was no limousine service from his community to the airport in Tampa and the same was badly needed.
One Golden, a Manager of National Airlines at the Tampa International Airport, testified that several hundred passengers per year came over his lines using the airport for points in the area involved in the application, but there was no limousine service for these passengers and that such service was badly needed.
A witness named Overton testified that he was Director of Traffic and Freight Bureau located in the Chamber of Commerce building in St. Petersburg and which served the city as County Traffic and Rate Bureau for Pinellas County. He was familiar with the traffic service in Pinellas and Hillsborough Counties and had been engaged in survey work for 32 years. He had made a particular study of traffic conditions in Pinellas County in relation to the schedules of the airlines using the Tampa airport. He knew of the conditions affecting the northern area of Pinellas County. He had compiled certain tabulations which were introduced in evidence. The tabulations showed how the airline service to the airport related to direct service of the Gulf Coast Motor Lines, Inc., from the airport to Clearwater, Belleair, Tarpon Springs, Oldsmar and Safety Harbor, and showed the waiting time at the airport for passengers using bus service. From Clearwater it ranged from 15 minutes to 8 hours and 45 minutes; other waiting time for various flights ranged from 7 hours to 1 hour and 45 minutes. The waiting time from Tarpon Springs varied from 36 minutes to 15 hours, and from Oldsmar and Safety Harbor the time varied from 29 minutes to 8 hours. It is unnecessary to detail any further the testimony showing lost time and the inconvenience to that part of the traveling public using airplanes as a means of transportation.
If those wishing to use air service as a means of transportation must lose so much time on account of inefficient or no ground transportation, they would be better off to use a horse and buggy, or wagon and mule, as a means of getting to an airport.
As shown by this record the respondent had jurisdiction. In the case of Pensacola Transit, Inc. v. Douglass, 160 Fla. 192, 34 So.2d 555, 560, this Court said:
“* * * If we that the Railroad Commission is without jurisdiction to regulate these routes, then the serving carrier may at will select and serve the profitable routes and decline transportation services to those along non-profitable routes. Tampa Transit Lines v. Matthews, 157 Fla. 875, 27 So.2d 377.”
In this case application for a new service or a service not now rendered is involved. It is true that there is some kind of service by a taxicab company operating under the authority of the City of Tampa but such service is entirely different from a service rendered by the use of limousines serving that part of the traveling public using airplanes for transportation.
In the case of State ex rel. City of Miami Beach v. Carter, Fla., 39 So.2d 552, in an opinion by Mr. Justice Hobson, this Court discussed a situation about jurisdiction very similar to the case at bar and held that the respondent did have jurisdiction.
The finding with reference to public convenience and necessity appears to have been influenced by the respondents’ determination that it had no jurisdiction, and also its failure to recognize the needs of that part of the traveling public using airplanes as being different from the needs of persons living in the communities affected who wished simply to go to or from Tampa.
The petition for writ of certiorari be, and the same is hereby, granted, and the order appealed from be, and the same is hereby, quashed, with directions that the respondent re-consider the application and the testimony and make its determination *792 as to public convenience and necessity by the application of the principles set forth in this opinion.
ROBERTS, C. J., and TERRELL and HOBSON, JJ., concur.