### Application of L & S TRUCKING CORP.

Railroad & Public Utilities Commission.

February 8 and April 15, 1955.

C. Clyde Atkins, Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, and Ronald Y. Stillman and Fred R. Baisden, Copeland, Therrel & Baisden, Miami Beach, for applicant.

James F. Minnet, Fort Lauderdale, for Royal Fleet Service and Refrigerated Transfer Service, protestants.

Daniel B. Hodgson, Alston, Sibley, Miller, Spann & Shackelford, Atlanta, Ga., for Railway Express Agency, protestant.

John Germany, Coles, Himes & Company, for Tamiami Trail Tours, Inc., protestant.

Matt O'Brien, Macfarlane, Ferguson, Allison & Kelly, and Craig Massey, all of Tampa, for Central Truck Lines, Great Southern Trucking Co., Overseas Transportation Co., Fogarty Bros. and Hunt Truck Lines, protestants.

Paul R. Harris for Harper's Delivery Service, protestant.

T. J. Kiernan, Miami, legislative representative Biscayne lodge 2058, Brotherhood of Railway & Steamship Clerks, Freight Handlers and Express Station Employees, protestants.

Chairman WILBUR C. KING, Commissioners JERRY W. CARTER and RICHARD A. MACK each participated in the disposition of this case.

BY THE COMMISSION.

*February 8, 1955:* On August 13 and November 3, 1954 the commission by its duly designated examiner, Alfred E. Sapp, held public hearings on this application at 2605 W. Flagler St., Miami.

This application, as amended at the first hearing, seeks a certificate of public convenience and necessity to operate an auto transportation company as a private contract carrier under contract with Crandon Wholesale Drug Co., Inc., Miami (hereafter referred to as "the company") providing for the transportation of wholesale drugs and supplies to its customers at points and places in that portion of Florida lying south of Flagler, Putnam, Marion, Sumter and Pasco counties, except Hillsborough and Pinellas counties.

The present owners of the company acquired it in September 1953. They also operate similar businesses in Milwaukee, Wis., and Rockford, Ill., where the applicant, or its officers and stockholders, make their deliveries under the same sort of contract.

At present the company makes its own deliveries in its own trucks in Dade, Broward and Palm Beach counties—constituting 75% of its business. Deliveries of the rest of the business are made by the regular route common carriers at a cost of approximately $15,000 per year.

If this application is granted it is proposed that the applicant will take over the company's trucks and procure such additional facilities as may be necessary to serve the extended area as well as the three counties mentioned. To all practical intents and purposes the applicant would become the company's delivery department. The arrangement would make for a "personalized" service which the company claims its customers want. None of the customers, however, testified to that effect; and it would appear that the main purpose is to permit the applicant to render a delivery service for the company that would help the latter in competing with other wholesale drug houses, it having been explained that the prices are about the same, and that it is the service part of the business which is competitive.

Although the company's trucks are not insulated or refrigerated, it claims that some of the items it sells require refrigeration, and the applicant proposes to have the trucks insulated to provide the required refrigeration—40 to 50 degrees.

The company stays open until 5 P.M. to receive orders, and its warehouse stays open until the orders are filled. The shipments

go out that night for delivery the next day. Some of the protestants like to pick up the shipments by 5 P.M. which is unsatisfactory to the drug company; but other protestants make the pickups as late as their schedules will permit, which in most instances seems to meet the company's requirements. On the other hand, the applicant's trucks could remain at the company's warehouse as long as it might take to fill the orders.

The company also urges the propositions that if it is permitted to use the applicant instead of the regular common carriers it will not have its merchandise intermingled with that of other shippers, and will not have to do so much packing and labeling because the applicant's drivers will become familiar with the items and the customers. Moreover, the applicant's service would require a minimum number of times for the items to be handled as there would be no warehousing nor transfer from one vehicle to another as under the common carriers' procedure.

Another advantage claimed for the applicant's service is that the applicant would bring back return items and undelivered C.O.D.s free of charge and also orders for additional goods, such as requisitions for narcotics. The applicant would also bring back items like carboys, on which deposits are required, for refunds or credits.

In addition to regular C.O.D.s, the company has what it terms voluntary C.O.D.s, which the applicant's drivers could handle because of their knowledge of the customers and the company's business practices and because of the exclusiveness of the service.

The company wants the deliveries made by noon, and the applicant proposes to do that. The common carriers are doing that, too, in most cases on the shipments they are handling distributed to points outside of Dade, Broward and Palm Beach counties. The only exceptions are where the motor carriers have to make interchanges, and where the railway express shipments go out on the morning trains instead of the night trains. In this connection the company admitted that the common carrier service is satisfactory within the limits of their schedules.

It is proposed to have the drug company's name on the applicant's trucks.

While the company said it had some complaints from customers regarding the deliveries made by the common carriers, they appear to have been normal and inconsequential, and none of the customers testified regarding the same. Even from the company's stand-

point the service of the common carriers beyond Dade, Broward and Palm Beach counties, other than not being "personalized," seems adequate.

The company has not used the protesting parcel delivery carriers because of their costs and territorial and weight restrictions.

Even if this application is granted the company said it will probably continue to use the common carriers for deliveries south of Miami, although that territory is embraced in the applicant's contract. It also said it will put on additional trucks of its own to serve the extended area, if the application is denied, even though the common carriers should meet the time elements.

Other claimed advantages of the applicant's service are that shipments need not be weighed and bills of lading will be unnecessary.

The protestants claim that the company is one of their best patrons in Miami, and that they have made and are willing to continue to make every effort to please them. Also that they would be adversely affected by the loss of the business they are now receiving. In this connection they point out that this traffic is mostly northbound whereas the preponderance of the traffic they handle is southbound.

Our Supreme Court in one of the early auto transportation cases, Riley v. Lawson, 143 So. 619 (1932), defined the term "public convenience and necessity" as it relates to private contract carriers. Such definition was later quoted by the Court in Central Truck Lines v. Railroad Commission, 1 So. 2d 470. The Court said at page 473—

> "Public convenience and necessity," as that term is used in the statute with reference to private contract carriers, means nothing more than a finding by the commission that, taking into consideration the stated statutory factors required to be considered as the basis for granting certificates to private contract carriers, the public convenience and necessity for adequate transportation as a whole in the territory involved, will not be unduly burdened or defeated by an inordinate use of the public highways by private contract carriers as a class, considered in relation to the necessary uses of the highways by other classes of motor vehicle traffic, and the necessity for carrying out and protecting the state and national policy of always maintaining adequate systems for transportation by rail.

The fact that the company is using its own trucks for its deliveries in Dade, Broward and Palm Beach counties indicates that

it needs a personal delivery service in this three-county area—that the service of the common carriers in this localized area does not meet its particular needs. The grant of the contract carrier certificate applied for as to only Dade, Broward and Palm Beach counties could have no adverse effect on transportation facilities within such territory or on transportation as a whole within the territory. The granting of such certificate, limited to the three counties, would not increase congestion of traffic or reduce the safety of traffic moving on the highways. It would simply substitute a transportation service subject to the regulatory provisions of the law and to the compensatory mileage tax required of auto transportation companies for the mileage-tax-exempt private carriage operation now being conducted by the company.

It is the finding of the commission that public convenience and necessity require the granting of the application as to Dade, Broward and Palm Beach counties only; that applicant failed to prove convenience and necessity as to the balance of the territory in which authority is sought. The commission further finds that applicant is qualified financially and otherwise to render the proposed transportation service.

It is ordered that private contract carrier certificate of public convenience and necessity #496 be issued to L & S Trucking Corp., 60 N.W. 6th St., Miami, authorizing the operation of an auto transportation company as a private contract carrier under contract with Crandon Wholesale Drug Co., Inc. for the transportation of wholesale drugs and supplies to the latter's customers in Dade, Broward and Palm Beach counties, upon condition that the certificate expire with the expiration of said contract or upon the expiration of five years, whichever first occurs, unless extended by this commission; further, that L & S Trucking Corp. file evidence with this commission of compliance with its rules governing insurance; the application herein in all other respects is denied.

*April 15, 1955:* After the entry of our order of February 8, 1955 the Supreme Court, on February 11, 1955, handed down opinions on writs of certiorari in two commission cases, Alterman Transport Line, et al v. Carter, et al (not yet reported), and Tamiami Trail Tours, Inc. et al v. Carter, 80 So. 2d 322. On February 22, 1955 Central Truck Lines, Inc. and Great Southern Trucking Co., protestants in this proceeding, filed a petition for rehearing, predicating it on the two opinions. In the opinions the Supreme Court (Justices Drew and Hobson dissenting) construed section 323.03(3), Florida Statutes 1953—and by inference

section 323.04 (3) to mean that before the commission can grant a certificate to an applicant in a territory or on a line already served by a certificate holder *the commission must first direct the existing certificate holder or holders serving such territory to provide such service.* We believe our order was a proper one at the time it was entered under commission and Supreme Court interpretations of chapter 323 effective prior thereto. On March 19, 1951 the commission in an order granting M. R. & R. Trucking Co. authority to serve territory already served by Great Southern Trucking Co., in interpreting section 323.03, stated—

> Does this statutory provision mean that a carrier may fail to furnish an adequate service to meet the public need in a territory and then be entitled to protection from a competing carrier who has proved that public convenience and necessity require the additional service which it proposes? We do not so interpret it.
>
> One holding a state given motor carrier monopoly owes a positive duty to the public to provide a service that reasonably meets their needs. It certainly should be assumed by all motor common carriers operating under the jurisdiction of this commission that they are expected and required at all times to provide the public with service and facilities which reasonably meet their transportation needs. From the evidence here before the commission it is apparent that protestant has not adequately handled the volume of shipments moving from Jacksonville into the area here involved and it has, therefore, failed to provide service and facilities which the commission requires. If we should accept protestant's interpretation of the statute before allowing another carrier to enter the field, we would be required to assume functions of management of the protestant's operations and direct it as to the managerial course it should take to alleviate the unsatisfactory condition. The conception that the public must wait while the commission attempts to require a carrier to do what it should do or should have done some time ago is not, in our opinion, a proper interpretation of the foregoing statute. The public convenience and necessity is of paramount importance to the private interest of a particular transportation company.

The Supreme Court, on certiorari, approved such interpretation, Great Southern Trucking Co. v. Mack, et al, 54 So. 2d 153.

As we understand the two February 11, 1955 Supreme Court opinions, it is now incumbent on the commission *to order an existing carrier to furnish a particular service before it may grant a certificate to another carrier.* Apparently it is not incumbent upon an existing carrier to provide the public with service and facilities which reasonably meet their transportation needs, under peril of having a new certificate issued in their territory if they fail to furnish such service. This, of course, means that an applicant at his effort and expense may fully prove that public convenience and

necessity require the service which he proposes and that the existing carriers through lack of diligence have failed to provide such service—only to be told by the commission that he cannot be granted a certificate until after the commission has directed the existing certificate holder or holders to furnish the service and they have failed or refused to do so.

Applying the Supreme Court rulings in the two cited cases to the application of the L & S Trucking Corp., it is apparent that because the commission has never directed the existing certificate holders in the territory to furnish the specific services needed by the wholesale drug company, our order of February 8, 1955 must be vacated.

Although it is difficult (if not in many instances impossible) to require a common carrier to furnish a service which is essentially private contract carriage, the existing certificate holders in the territory here involved should be required, as nearly as they can, to furnish the service needed by the company. Sub-section (8) of section 323.01, Florida Statutes, in defining a private contract carrier, states that it is an auto transportation company engaged in the transportation of persons or property over public highways of this state which is not a common carrier. A common carrier cannot always perform the same service for an individual shipper as can be performed by a private contract carrier, discrimination between shippers might well result—therefore this commission should not order a common carrier to perform any special service for a particular shipper that it does not require to be furnished to any other shipper.

The evidence in this case shows that the company needs a delivery service to its customers in Dade, Broward and Palm Beach counties that will furnish same day delivery or overnight delivery (if shipment is not ready for delivery until late afternoon or evening) to any and all points in the three counties; that it needs trucks available each evening until all its orders are packaged following its closing hour at 5 P.M. to make deliveries in such area by the following morning. The trucks must be insulated and refrigerated at from 40 to 50 degrees when necessary due to elapsed time for delivery and the shipper must be furnished as nearly as possible with a "personalized" transportation service tailored to fit its particular needs. Due to the competitive nature of its business it is essential to the shipper that such be done or it will have to continue to use its own trucks in private carriage.

It is the finding of the commission that Crandon Wholesale Drug Co., Inc. and any other shippers within the territorial scope of protestants' operating authorities with similar shipping needs are entitled to receive such transportation service from the existing certificate holders or, if said certificate holders are unable, unwilling or fail to furnish such service, said shippers are entitled to receive such service from a new regulated transportation company—that such service may reasonably be required by the commission.

In consideration of the premises, pursuant to the two aforesaid rulings of the Supreme Court, it is ordered that the petition of Central Truck Lines, Inc. and Great Southern Trucking Co. for rehearing is granted, and our order of February 8, 1955 and all authority covered by private contract carrier certificate #496 issued thereunder is hereby canceled and vacated.

It is further ordered that each of the common carrier certificate holders who appeared in protest to the granting of this application, within the limits of the authority of each of such carriers, either individually or collectively through interchange furnish the above outlined transportation service to Crandon Wholesale Drug Co. and any other shipper within the territorial scope of such carriers' operating authorities who may need a similar service, said protesting certificate holders being as follows—Tamiami Trail Tours, Inc., Central Truck Lines, Inc., Great Southern Trucking Co., Overseas Transportation Co., Inc., Fogarty Bros. Truck Line, Inc., Hunt Truck Lines, Inc., Royal Fleet Service and Refrigerated Transfer Service. Wherever necessary, carriers must amend their schedules on file with the commission to accomplish such result. Such carriers must also work out with the shipper a satisfactory solution to its problem of shipping narcotics.

It is further ordered that this docket be held in a suspense status for a reasonable period of time until it can be determined whether the existing certificate holders are able and willing to perform, and can satisfactorily perform, the transportation service needed by Crandon Wholesale Drug Co. The cause may be again activated by motion of one of the parties hereto setting forth sufficient grounds to show that the proceeding may be properly concluded; or by the commission on its own motion.