**Application of YELLOW CAB COMPANY OF ST. PETERSBURG, Inc.**

**No. 5203-CCB.**

Railroad & Public Utilities Commission.

January 13, 1959.

John M. Allison, Tampa, for applicant.

A. Pickens Coles, Tampa, for Taxicabs of Tampa, Inc., protestant.

Lewis H. Hill, Tampa, for C. E. Hill d/b/a St. Petersburg Limousine Service, as his interest might appear.

BY THE COMMISSION.

The commission by its duly designated examiner, J. B. Norman, held a public hearing on this application on April 11, 1958 in the City Hall, St. Petersburg, pursuant to notice.

Following the hearing, the examiner filed his report and recommendations in the form of a proposed order wherein he recommended that the application be denied. Thereafter exceptions to the proposed order were filed by the applicant, and subsequently the commission heard oral argument by counsel for the parties. Upon consideration of the entire record, the commission now enters its order in the premises.

Applicant, Yellow Cab Company of St. Petersburg, Inc., seeks extension of its certificate of public convenience and necessity #379 to authorize transportation of passengers and their baggage between all points in the city of Tampa, except Tampa International Airport, on the one hand, and Pinellas County International Airport on the other hand. Applicant proposes to station limousines at Pinellas County International Airport to meet all arriving planes and to provide limousines and passenger vehicles at points in the city of Tampa convenient to picking up passengers requiring transportation to the Pinellas County International Airport in adequate time to make connection with departing planes.

Applicant, under certificate #379, presently has authority to transport passengers in limousines as a common carrier from St. Petersburg, Gulfport and Gulf Beaches, Clearwater, Largo, Belleaire and Indian Rocks to Pinellas International Airport and return over the most direct available routes.

Protestant, Taxicabs of Tampa, Inc., holds certificate of public convenience and necessity #408 which authorizes, in addition to other transportation, common carriage of passengers and their baggage in limousine service between the Pinellas International Airport and five specified points in the city of Tampa—the Tampa Terrace Hotel, the Hillsboro Hotel, the Floridian Hotel, the Thomas Jefferson Hotel and the Union Bus Station. The authority here sought by applicant would duplicate this authority heretofore granted to protestant by commission order #2766 on September 12, 1952.

C. E. Hill, d/b/a St. Petersburg Limousine Service, who also appeared in this proceeding but not as a protestant, holds no authority which would conflict with the authority here sought.

In addition to Byron Shoupe, applicant's executive vice president, applicant produced three other witnesses—a Pinellas County Commissioner, the manager of the Pinellas County International Airport, and the director of the Traffic and Rate Bureau of the St. Petersburg Chamber of Commerce, who also is director of St. Petersburg and Pinellas County Rate Bureau. None of these witnesses testified to a need for the proposed service. The only semblance of

any proof of public convenience and necessity is that contained in a resolution of the board of county commissioners of Pinellas County endorsing the application (exhibit no. 2).

Applicant relies upon the opinion of the Supreme Court of Florida in C. V. Roberts v. Carter, Fla., 76 So. 2d 789, in which the Supreme Court quashed an order of this commission which had denied an application for a certificate for limousine service between northern Pinellas County and the Tampa International Airport upon a finding by the commission that the applicant had failed to prove public convenience and necessity. The Supreme Court's opinion, however, was based upon a showing that no existing limousine service was available.

An entirely different situation exists as to this present application. Here we have as a protestant an existing certificate holder with authority to perform common carrier limousine service between downtown Tampa points and the Pinellas Airport. This certificate holder is furnishing a satisfactory service from Tampa *to* the airport but is prohibited by the Airport Authority (the board of county commissioners of Pinellas County) from picking up passengers on the airport property. It further appears that this protestant stands ready, willing and able to provide all service needed if allowed to do so and it has offered to enter into a contract with the board of county commissioners which for all practical purposes is identical with the contract of applicant.

By section 331.15, Florida Statutes, the legislature has directed issuance by this commission of contract carrier certificates as a matter of right and without hearing to any auto transportation company holding a contract entered into with a board of county commissioners owning and operating an airport for transportation of passengers for hire *between such airport and points within the county.* It should be noted that this statute allows such a grant of authority without proof of public convenience and necessity therefor and without consideration of transportation companies already authorized to perform the service only when the transportation does not extend beyond the county in which the airport is located.

All of the provisions of section 323.03 apply here, however—because this operation extends beyond Pinellas County. We must therefore consider the presently existing certificate holder who now provides service from Tampa to the airport, but is prevented from performing service under its certificate from the airport in the reverse direction through no fault of its own.

Applicant not only failed to show a need for its proposed service but no showing was made that any need which might exist could not be filled by the existing certificate holder if the county commission will permit it to pick up passengers on the airport property. A grant of this application under these circumstances would amount to an unauthorized extension of the terms of section 331.15 to remove therefrom the one-county limitation.

The application is denied.